UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------
CLIFTON DACAS,

                                 Plaintiff,

        -against-

VINCENT DUHANEY, JEANETTE CLOUDEN
AKA JEANETTE DUHANEY, RUTLAND ROAD
MEAT AND FISH, 986 RUTLAND REALTY,
LLC, 144 HOLDINGS LLC, EPP MANAGEMENT
LLC and JOHN DOES 1-10,

                            Defendants.

-------------------------------------------------------------

REPORT &
RECOMMENDATION
17-CV-03568 (ILG) (SMG)

GOLD, STEVEN M., U.S. Magistrate Judge:

## INTRODUCTION

      Plaintiff Clifton Dacas brings this action against defendants Vincent Duhaney, Jeanette

Duhaney (together, "the Duhaneys"),[1] Rutland Road Meat and Fish ("Rutland Grocery"), 144

Holdings LLC, 986 Rutland Realty, LLC ("Rutland Realty"), and EPP Management LLC

("EPP"), seeking unpaid minimum and overtime wages, spread-of-hours pay, liquidated

damages, statutory damages, and attorneys' fees, pursuant to the Fair Labor Standards Act

("FLSA") and New York Labor Law ("NYLL").  Complaint ("Compl."), Dkt. 1; Proposed

Amended Complaint ("PAC"), Dkt. 65-1.[2]  According to plaintiff, the Duhaneys own and/or

operate the four entity defendants, and all defendants purportedly own, manage, and/or control

---

[1]  The Duhaneys were never served in this action.

[2]  On March 26, 2018, plaintiff moved for default judgment against Rutland Grocery and 144 Holdings LLC for
failure to answer or otherwise defend.  Dkt. 22.  That motion is currently pending.  *See Frow v. De La Vega*, 82 U.S.
552, 554 (1872) (holding that in a multi-defendant case in which defendants are alleged to be jointly liable, the
proper course is to postpone decision on a motion for default judgment against one defendant until the case against
the other defendants concludes).

Rutland Grocery and several residential properties located in Brooklyn.  Compl. ¶¶ 17–21; PAC ¶¶ 17–21.[3]  Rutland Grocery was located at a mixed-used property at 986 Rutland Road, Brooklyn, N.Y. 11212, and Rutland Realty, for a certain period of time, owned, controlled, and/or managed 986 Rutland Road.

On June 7, 2018, Rutland Realty and EPP moved for judgment on the pleadings.  Plaintiff opposed the motion to dismiss and moved, in the alternative, for leave to amend.  However, due to their subsequent failure to defend the action, the Clerk of the Court noted Rutland Realty's and EPP's defaults on December 3, 2018.  Clerk's Entry of Default dated Dec. 3, 2018.  On December 11, 2018, plaintiff moved for default judgment against Rutland Realty and EPP.  Dkt. 36.  Rutland Realty and EPP separately cross-moved to vacate their defaults.  Dkt. 49; Dkt. 54.

Senior United States District Judge I. Leo Glasser has referred the various pending motions to me for report and recommendation.  For the following reasons, I respectfully recommend that the Court deny plaintiff's motion for a default judgment, grant Rutland Realty's and EPP's cross-motions to vacate their defaults, deny Rutland Realty's and EPP's motion for judgment on the pleadings, and grant plaintiff leave to amend the Complaint.  Moreover, I respectfully recommend that plaintiff recover the reasonable attorneys' fees and costs incurred in connection with the motion for default judgment.

## BACKGROUND

### I.  FACTUAL BACKGROUND

Between April 2003 and December 2016, plaintiff was employed as a grocery clerk at Rutland Grocery and a superintendent/porter at the subject properties owned and/or managed by

---

[3]  The subject residential properties are: (1) 144 East 93rd Street, Brooklyn, N.Y. 11212; (2) 126 East 94th Street, Brooklyn N.Y. 11212; (3) 149 East 96th Street, Brooklyn, N.Y. 11212; and (4) 326 East 94th Street, Brooklyn, N.Y. 11212.  Compl. ¶¶ 17-21; PAC ¶¶ 17-21.

one or more defendants, including the mixed-use property at 986 Rutland Road. PAC ¶¶ 61–64; Declaration of Clifton Dacas ("Dacas Decl."), Dkt. 44, ¶ 4. Throughout his employment, plaintiff worked seven days a week, for at least 16 hours per day, for a total of 112 or more hours per week. PAC ¶ 65; Dacas Decl. ¶ 12. Dacas was paid a fixed salary of $220 per week. PAC ¶ 66; Dacas Decl. ¶ 13.

Defendants provided plaintiff with free lodging in a windowless room in the basement of one of the residential properties identified above. PAC ¶¶ 70–72; Dacas Decl. ¶ 18. The room, which was approximately 6 feet by 8 feet in size, was located behind the building's boiler and did not contain a bathroom. PAC ¶¶ 72–75; Dacas Decl. ¶ 18. Plaintiff was permitted to use the bathroom in the upstairs communal apartments of the building. PAC ¶ 75; Dacas Decl. ¶ 18.

## II.   PROCEDURAL HISTORY

At the early stages of this litigation, Rutland Realty and EPP, through counsel Joshua E. Abraham, Esq., filed an answer, appeared at the initial conference, and engaged in multiple telephone conferences. Dkts. 8, 9, 13, 19, 24, and 27. In addition, Rutland Realty and EPP moved for judgment on the pleadings on the ground that plaintiff's complaint failed to allege sufficient facts to plead an employer-employee relationship between plaintiff and Rutland Realty and EPP. Mem. of Law in Supp. of Mot. for J. on Pleadings, Dkt. 26-1. Plaintiff opposed the motion and moved, in the alternative, for leave to amend the Complaint pursuant to Rule 15(a). Mem. of Law in Opp. to Mot. for J. on Pleadings, Dkt. 28.

On October 15, 2018, Abraham moved to withdraw as counsel on the grounds that defendants (1) had not paid his fees, (2) indicated that they did not intend to pay his fees, and (3) failed to respond to his emails and telephone calls. Declaration of Joshua E. Abraham ("Abraham Decl."), ¶¶ 2–3, Dkt. 30-1. A hearing on the motion was scheduled for October 26,

2018.  Order dated Oct. 15, 2018.  The Scheduling Order provided that "[a] principal with full authority to act on behalf of . . . [Rutland Realty] and [EPP] must be present" and that "[f]ailure to appear will result in an order granting counsel's motion for leave to withdraw and recommending that the defaults of [Rutland Realty] and [EPP] be entered based upon their failure to appear through counsel." *Id.*  Abraham served this Order on Rutland Realty and EPP via email and first-class mail on October 16, 2018.  Declaration of Service ("Decl. of Service") dated Oct. 16, 2018, Dkt. 31.

Rutland Realty and EPP failed to appear at the conference on October 26, 2018.  The Court granted Abraham's motion to withdraw as counsel, Order dated Oct. 26, 2018, and alerted Rutland Realty and EPP that, unless they "appear[ed] through counsel by November 16, 2018, plaintiff may move for entry of their default[s]."  Min. Entry dated Oct. 26, 2018, Dkt. 32.  Abraham served this Order on Rutland Realty and EPP via email, text, and first-class mail on October 26, 2018.  Decl. of Service dated Oct. 26, 2018, Dkt. 33.  After Rutland Realty and EPP failed to retain substitute counsel by the deadline set by the Court, plaintiff requested certificates of default, Dkt. 34, and the Clerk then noted the defaults of both Rutland Realty and EPP on December 3, 2018, Dkt. 35.

Plaintiff then moved for entry of a default judgment against Rutland Realty and EPP.  Dkt. 36.  The Court entered an Order directing Rutland Realty and EPP to respond to the motion by January 11, 2019.  Order dated Dec. 27, 2018, Dkt. 39.  Plaintiff served the Order on Rutland Realty and EPP via certified mail.  Aff. of Service dated Dec. 27, 2018, Dkt. 40-2.  Shea Sigal, apparently writing on behalf of Rutland Realty and EPP, requested that the Court "stay all proceedings" until those defendants' motion for judgment on the pleadings was decided.  Sigal Letter dated Jan. 10, 2019, Dkt. 42.  The Court entered an Order scheduling a status conference

4

for January 29, 2019 and directing that Sigal and counsel for all parties attend.  Order dated Jan.

15, 2019.

Neither Sigal nor counsel for Rutland Realty and EPP appeared at the status conference

on January 29, 2019.  Dkt. 45.  The Court denied Sigal's application to stay the proceedings.

Order dated Jan. 29, 2019, Dkt. 47.  Because it was not entirely clear that Sigal received notice

of the December 27 Order directing that opposition to plaintiff's motion for a default judgment

be filed by January 11, 2019, the Court extended the time to file opposition papers until February

22, 2019.  In addition, the Court pointed out that LLCs such as Rutland Realty and EPP may

appear in court only through counsel, and directed that only an attorney could submit opposition

to plaintiff's motion on their behalf.  On February 21, 2019, EPP, through new counsel, cross-

moved to vacate its default and, having first obtained an extension of time, Rutland Realty,

through separate new counsel, filed its own cross-motion to vacate its default.[4]  Dkts. 49, 54. On

August 12, 2019, plaintiff submitted a proposed Amended Complaint for the Court's

consideration.

**DISCUSSION**

## I.    MOTION FOR DEFAULT JUDGMENT AND CROSS-MOTIONS TO VACATE DEFAULT

### A.  Legal Standard

Corporate entities must appear through counsel.  *See Rowland v. Cal. Men's Colony, Unit*

*II Men's Advisory Council*, 506 U.S. 194, 201–202 (1993).  This requirement applies to limited

liability companies such as Rutland Realty and EPP.  *See Lattanzio v. COMTA*, 481 F.3d 137,

140 (2d Cir. 2007).  Moreover, when a corporation declines to obtain counsel, entry of default

---

[4]  Rutland Realty's separate counsel has since been substituted as counsel of record for EPP.  Order dated Aug. 16, 2019.

judgment against the entity is appropriate under Rule 55(a) of the Federal Rules of Civil

Procedure.  *See Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1310 (2d Cir. 1991).

A court, however, "may set aside an entry of default for good cause."  Fed. R. Civ. P.

55(c).  "Because Rule 55(c) does not define the term 'good cause,'" the Second Circuit has

enumerated three criteria for deciding whether to relieve a party from default: "(1) whether the

default was willful; (2) whether setting aside the default would prejudice the adversary; and (3)

whether a meritorious defense is presented."  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d

Cir. 1993).  District courts may also consider "[o]ther relevant equitable factors," including

"whether the failure to follow a rule of procedure was a mistake made in good faith and whether

the entry of default would bring about a harsh or unfair result."  *Id*.  Although whether to set

aside a default is left to the sound discretion of a district court, the court must bear in mind the

Second Circuit's "strong 'preference for resolving disputes on the merits.'"  *New York v. Green*,

420 F.3d 99, 104 (2d Cir. 2005) (quoting *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d

Cir. 2001)).  Accordingly, any doubts "should be resolved in favor of the defaulting party."

*Enron Oil Corp.*, 10 F.3d at 96.

### B.  Whether Rutland Realty and EPP have shown good cause to vacate the entry of defaults

Having considered the criteria set forth in *Enron Oil*, I conclude that there is good cause

to vacate the defaults of Rutland Realty and EPP.  I address each of those criteria below.

### i.  Whether Rutland Realty's and EPP's defaults were willful

A default is willful if it results from "conduct that is more than merely negligent or

careless, but is instead egregious and . . . not satisfactorily explained."  *Bricklayers & Allied

Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d

182, 186 (2d Cir. 2015) (internal quotation marks and citation omitted).  A finding of bad faith is

6

not a "necessary predicate." *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir.

1998).  Rather, "it is sufficient that [a] defendant defaulted deliberately." *Id.*  For example,

courts have found a default to be willful where "an attorney [or litigant] failed, . . .  for flimsy

reasons, to comply with scheduling orders; or failed, . . . for incredible reasons, to appear for a

scheduled pretrial conference and unaccountably delayed more than 10 months before moving to

vacate." *S.E.C. v. McNulty*, 137 F.3d 732, 738–39 (2d Cir. 1998) (internal citations omitted).  A

defendant's prompt response to an entry of default, on the other hand, suggests that the default

was not willful.  *See Enron Oil Corp.*, 10 F.3d at 98; *see also Johnson v. New York Univ.*, 324

F.R.D. 65, 70 (S.D.N.Y. 2018) (defaults were not willful because, among other reasons, the

moving defendants sought to vacate the defaults "a mere two business days" after they were

entered)).

      Here, the record reflects that Rutland Realty and EPP, through prior counsel, actively

participated in the litigation by filing an answer, appearing at the initial conference, engaging in

multiple telephone conferences, and moving for judgment on the pleadings.  Dkts. 9, 13, 19, 24,

26, and 27.  However, after their prior counsel moved for leave to withdraw, Rutland Realty and

EPP failed to retain substitute counsel and appear at subsequent conferences, even after the Court

repeatedly warned that they could not proceed in this case unless represented by counsel.

      The declarations presented by Rutland Realty and EPP do not present satisfactory

explanations for their defaults.  In his declaration, Sigal states that, as a layperson, he

misunderstood the October 15 Order to mean that if he did not appear at the upcoming hearing

regarding the motion to withdraw, such motion "would be granted, and that Rutland Realty and

EPP then would have to obtain a replacement attorney, if their motion to dismiss were not

granted."  Declaration of Shea Sigal ("Sigal Decl."), Dkt. 54-1, ¶ 3.  Sigal further claims that,

upon receipt of plaintiff's motion for default judgment, he only then "realized that it would be necessary to employ replacement counsel" and sought a stay in order to "locate an attorney appropriate for this action (both in terms of experience and cost)."  *Id.* ¶ 4.  After his request for a stay was denied, he "incorrectly believed that [he] had until February 22, 2019 to [find replacement counsel], not realizing the time and effort that would be required to oppose [p]laintiff's motion for . . . default judgment."  *Id.* ¶ 5.  Likewise, in a separate declaration, Chesky Engel, as the managing member of EPP, claims that he initially "believed that EPP did not need a new attorney because the [m]otion to [d]ismiss was already fully briefed and was just awaiting a decision" and that, after prior counsel's motion to withdraw was granted, he was informed by Sigal that "Rutland [Realty] w[ould] cover the representation."  Declaration of Chesky Engel ("Engel Decl."), Dkt. 49-1, ¶¶ 7, 8.

There is no language in any of the Orders prior to July 2019 suggesting that Rutland Realty and EPP did not need to retain counsel while their motion for judgment on the pleadings was pending or indicating that this action would be stayed while Rutland Realty and EPP sought substitute counsel.  Rather, the Court's October 15 Order expressly warned that "[a] principal with full authority to act on behalf of . . . [Rutland Realty] and [EPP] must be present" at the hearing on the motion to withdraw and that "[f]ailure to appear will result in an order granting counsel's motion for leave to withdraw and recommending that the defaults of [Rutland Realty] and [EPP] be entered based upon their failure to appear through counsel."  Order dated Oct. 15, 2018.  Sigal's and Engel's arguments that they misunderstood the October 15 Order are unconvincing in light of the unambiguous language of that Order and the Court's subsequent unambiguous warnings regarding the requirement to appear through counsel.  Moreover, Rutland Realty's and EPP's willfulness can be inferred from their delayed response, as it took

approximately four months after this Court granted prior counsel's motion to withdraw for Rutland Realty and EPP to separately retain substitute counsel and cross-move to vacate the defaults. Therefore, I conclude that Rutland Realty's and EPP's defaults were willful.

### ii. Whether Rutland Realty and EPP have presented a meritorious defense

To establish a meritorious defense, a defendant need not prove the defense conclusively. *See McNulty*, 137 F.3d at 740; *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). Rather, the defendant need only present some evidence of facts that, "if proven at trial, would constitute a complete defense." *Enron Oil Corp.*, 10 F.3d at 98. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Am. All. Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)).

Here, Rutland Realty and EPP deny plaintiff's allegations and assert a number of boilerplate affirmative defenses (e.g., failure to state a claim, statute of limitations, lack of jurisdiction). However, these defendants also assert that they "were not employers of . . . [p]laintiff under applicable law." Answer ("Ans."), Dkt. 9, ¶ 97.

Rutland Realty and EPP support this defense with declarations submitted by their respective principals: Sigal claims that Rutland Realty never employed plaintiff and that Rutland Realty's "only connection to [p]laintiff is that his alleged employers rent[ed] commercial space from Rutland Realty," Sigal Decl. ¶ 6, and Engel asserts that "EPP does not own, manage[,] or control any of the properties listed in the complaint, . . . did not hire [p]laintiff, does not have any control over [p]laintiff, or receive any benefit from . . . [p]laintiff," Engel Decl. ¶ 14. Although it may be that at least some of their affirmative defenses are no more than boilerplate, Rutland Realty and EPP have put forth a meritorious defense, albeit an as yet untested one, similar to

9

those held by other courts to be sufficient to warrant vacating a default. *See, e.g., Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Coop., Pension & Welfare Funds v. Penco United, LLC*, 2015 WL 518623, at *8 (E.D.N.Y. Feb. 5, 2015); *Franco v. Ideal Mortg. Bankers, Ltd.*, 2010 WL 3780972, at *3 (E.D.N.Y. Aug. 23, 2010), *report & recommendation adopted*, 2010 WL 3780984 (E.D.N.Y. Sept. 17, 2010).

### iii.  Whether plaintiff will be prejudiced by vacatur

The Second Circuit has held that "delay standing alone does not establish prejudice" sufficient to defeat a showing of good cause. *Enron Oil Corp.*, 10 F.3d at 98. "Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis*, 713 F.2d at 916 (internal quotation marks and citation omitted); *see also Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010).

Here, there is no indication that plaintiff will be prejudiced if the defaults entered against Rutland Realty and EPP are vacated. During the telephone conference on July 11, 2019, Rutland Realty's counsel, Lloyd Eisenberg, Esq.,[5] stated that Rutland Realty and EPP had offered to pay plaintiff's reasonable attorneys' fees and costs associated with the motion for default judgment, but that plaintiff's counsel declined their offer. Min. Entry dated July 11, 2019, Dkt. 61.[6] Moreover, although almost four months have passed since prior counsel's motion to withdraw was granted, plaintiff has failed to demonstrate that this delay resulted in a loss of evidence, increased difficulties in obtaining discovery, provided a greater opportunity for fraud and collusion, or caused any other cognizable harm.

---

[5]  Eisenberg has been the attorney of record for both Rutland Realty and EPP since August 16, 2019.

[6]  The July 11, 2019 telephone conference was conducted on the record, but the parties have not ordered a transcript.

For all these reasons, I respectfully recommend that the Court deny plaintiff's motion for default judgment and grant Rutland Realty's and EPP's cross-motions to vacate their defaults. I further respectfully recommend that plaintiff recover the reasonable attorneys' fees and costs he incurred in connection with the motion for default judgment. If the parties cannot reach an agreement with respect to these fees, I respectfully recommend that plaintiff be permitted to seek them by motion.

## II.   MOTIONS PURSUANT TO RULE 15(A) AND RULE 12(C)

In their motion for judgment on the pleadings pursuant to Rule 12(c), Rutland Realty and EPP principally argue that the original Complaint alleges "[n]o specific facts whatsoever (plausible or otherwise)" that "[p]laintiff was actually employed by [Rutland Realty and EPP], that . . . [p]laintiff did any specific work for [Rutland Realty and EPP], or that the Duhaneys' purported misconduct should be attributed to [Rutland Realty and EPP]." Mem. of Law in Supp. of Mot. for J. on Pleadings, at 4. In response, plaintiff argues that his "allegations [in the Complaint] are more than sufficient" to plausibly claim that Rutland Realty and EPP, together with the other defendants, jointly employed plaintiff. Mem. of Law in Opp. to Mot. for J. on Pleadings, at 7. Alternatively, plaintiff moves for leave to amend the Complaint pursuant to Rule 15(a), and has submitted a proposed Amended Complaint that, among other things, purports to supplement the factual allegations regarding the ownership, management, and control of the residential properties, the unity of defendants, and defendants' management and control of plaintiff.

It is well-settled that, where, as here,

> the [p]laintiff seeks to amend [the] complaint while a motion to dismiss is pending, the Court has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion

11

> [to dismiss] as moot to considering the merits of the motion in light
> of the amended complaint.

*Bryan v. I.C. Sys., Inc.*, 2017 WL 9485658, at *3 (E.D.N.Y. Aug. 28, 2017) (internal quotation

marks and citation omitted), *report & recommendation adopted*, 2017 WL 4326041 (E.D.N.Y.

Sept. 28, 2017).  Particularly, where the new proposed new pleading

> does not seek to add new claims or parties, and the [d]efendants
> have had a sufficient opportunity to respond to the new pleading,
> then, for the purposes of procedural efficiency, the merits of the
> pending motion to dismiss ought to be considered in light of the
> proposed amended complaint.

*Id.* (internal quotation marks and citation omitted).  Because plaintiff Dacas does not seek to add

new defendants or claims and Rutland Realty and EPP have had ample opportunity to respond to

the proposed Amended Complaint, Rutland Realty's and EPP's motion to dismiss is considered

below in light of the proposed Amended Complaint.

### A.  Legal Standards

#### i.  Legal standard for plaintiff's motion to amend the complaint

Leave to amend, when required at all, should be "freely give[n] . . . when justice so

requires."  Fed. R. Civ. P. 15(a)(2).  In general, amendments are favored because they "tend to

facilitate a determination on the merits."  *Zucker v. Porteck Global Servs. Inc.*, 2015 WL

6442414, at *4 (E.D.N.Y. Oct. 23, 2015).  "It is within the sound discretion of the district court

whether to grant or deny leave to amend."  *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir.

1995).

"Where it appears that granting leave to amend is unlikely to be productive . . . it is not an

abuse of discretion to deny leave to amend."  *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir.

2002) (internal quotation marks and citation omitted).  "One appropriate basis for denying leave

to amend is that the proposed amendment is futile."  *Id.*; *see Health-Chem Corp. v. Baker*, 915

12

F.2d 805, 810 (2d Cir. 1990).  "An amendment to a pleading is futile if the proposed claim could

not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)."  *Lucente*, 310 F.3d at 258.

Therefore, "the standard for futility with respect to a motion to amend under Rule 15 is identical

to the standard for a Rule 12(b)(6) motion to dismiss."  *Bryan*, 2017 WL 9485658, at *4 (internal

quotation marks and citation omitted).

### ii.  Legal standard for Rutland Realty's and EPP's motion for judgment on the pleadings pursuant to Rule 12(c)

Generally, "[t]he standard for addressing a Rule 12(c) motion for judgment on the

pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."

*Bastuk v. Cty. of Monroe*, 628 F. App'x 4, 6 (2d Cir. 2015).  To survive a motion to dismiss

pursuant to Rule 12(b)(6), a complaint must contain sufficient facts, accepted as true, to "state a

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if it is supported by

"factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Id.* at 678.  In applying this standard, the court must accept as true

all well-pleaded factual allegations and draw all reasonable inferences in favor of the non-

moving party, *see Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014), but should not credit

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements," *Iqbal*, 556 U.S. at 678.  At the motion to dismiss stage, the court "assess[es] the

legal feasibility of the complaint," but does not "assay the weight of the evidence which might be

offered in support thereof."  *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011)

(quoting *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000)).  Ultimately, the factual allegations of the

complaint need only "be enough to raise a right to relief above the speculative level."  *Twombly*,

550 U.S. at 555.

13

### B. Employer Status

To be held liable for violations of the FLSA, a defendant must be an employer of the plaintiff alleging those violations. *See* 29 U.S.C. § 207(a)(1). The FLSA defines an "employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and may include "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a). This definition has been described as one with "striking breadth," *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992), intended to allow the provisions of the FLSA to have "the widest possible impact in the national economy," *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (internal quotation marks and citation omitted). An individual may simultaneously have multiple "employers" for the purposes of the FLSA, in which event, "all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA]." 29 C.F.R. § 791.2(a).[7]

The Supreme Court "has instructed that the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts.'" *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). In deciding whether a person or entity is an employer, the Second Circuit "has treated employment for FLSA purposes as a flexible concept to be determined on a case-by- case basis by review of the totality of the circumstances," *id.* at 141–42, and has set forth several tests relevant to the inquiry. The first, set out in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984), "looks to whether a putative employer exercises 'formal control' over a worker."

---

[7] The standard for determining employer status under the NYLL is "nearly identical" to the standard used under the FLSA. *Olvera v. Bareburger Group LLC*, 73 F. Supp. 3d 201, 206 (S.D.N.Y. 2014).

*Greenawalt v. AT & T Mobility LLC*, 642 Fed. App'x 36, 37 (2d Cir. 2016).  Factors relevant to

this determination include "whether the alleged employer (1) had the power to hire and fire the

employees, (2) supervised and controlled employee work schedules or conditions of

employment, (3) determined the rate and method of payment, and (4) maintained employment

records."  *Carter*, 735 F.2d at 12 (internal quotation marks and citation omitted).

The second test, drawn from *Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir. 1988),

focuses on whether "workers depend upon someone else's business . . . or are in business for

themselves," *id.* at 1059, and thus is most "relevant for distinguishing between independent

contractors and employees," *Greenawalt*, 642 Fed. App'x at 37 (quoting *Velez v. Sanchez*, 693

F.3d 308, 326 (2d Cir. 2012)).  The third test, set out in *Zheng v. Liberty Apparel Co. Inc.*, 355

F.3d 61 (2d Cir. 2003), is most relevant in the context of subcontractor relationships and inquires

whether an alleged employer exerts "functional control" over a worker.  *Greenawalt*, 642 Fed.

App'x at 38 (internal citation omitted).  Factors relevant to this test include (1) whether the

putative employer's premises and equipment were used for the plaintiff's work; (2) whether the

business could or did shift as a unit from one putative joint employer to another; (3) the extent to

which the plaintiff performed a discrete line-job that was integral to the putative employer's

process of production; (4) whether responsibility under the contracts could pass from one

subcontractor to another without material changes; (5) the degree to which the putative employer

or its agents supervised the plaintiff's work; and (6) whether the plaintiff worked exclusively or

predominantly for the putative employer.  *See Zheng*, 355 F.3d at 72.

In determining whether multiple defendants constitute a single employer, district courts

in the Second Circuit utilize an "integrated enterprise" test and consider the following factors: (1)

interrelation of operations; (2) centralized control of labor relations; (3) common management;

and (4) common ownership or financial control.  *See*, *e.g.*, *Flores v. 201 W. 103 Corp.*, 256 F.

Supp. 3d 433, 440 (S.D.N.Y. 2017); *Coley v. Vannguard Urban Improvement Ass'n, Inc.*, 2016

WL 4179942, at *5 (E.D.N.Y. Aug. 5, 2016); *Lopez v. Pio Pio NYC, Inc.*, 2014 WL 1979930, at

*3 (S.D.N.Y. May 15, 2014).

Here, plaintiff's proposed Amended Complaint alleges facts that, taken as true, establish

that Rutland Realty and EPP were plaintiff's employers.  The proposed Amended Complaint

alleges that the Duhaneys owned and operated Rutland, a grocery and deli, several residential

properties, EPP, and Rutland Realty, a property management company.  PAC ¶¶ 1, 13, 15, 20.

According to plaintiff, he worked not only as a laborer and clerk at the grocery and deli, but also

as a superintendent and porter at various residential properties owned and managed by

defendants.  *Id.* ¶¶ 2, 36, 39, 44.  At least one of those properties is owned and managed by

Rutland Realty.  *Id.* ¶ 23.  The proposed Amended Complaint describes plaintiff's duties as a

porter and superintendent in some detail; plaintiff alleges his responsibilities included making

repairs to showers, sinks, appliances, cabinets, and walls, as well as sweeping, picking up

garbage, and light landscaping.  *Id.* ¶ 64.  Plaintiff alleges that he worked more than 140 hours

per week at his various responsibilities and received free lodging and one weekly payment of

$220 in cash for all of his labors.  *Id.* ¶ 66–70.

Although plaintiff does not explicitly refer to the "integrated enterprise" test, he alleges

that all defendants, including Rutland Realty and EPP, "were interrelated and unified," *id.* ¶ 34,

and "had the power to act, indirectly or directly, on behalf of one another," *id.* ¶ 42.  Plaintiff

further alleges that Rutland Grocery and the residential properties "shared a common

management and were centrally controlled and/or owned by [defendants]," *id.* ¶ 35, and that

plaintiff "performed his work at [those] buildings," *id.* ¶ 44, and "worked exclusively for

16

[defendants]," *id.* ¶ 45.  As for Rutland Realty and EPP specifically, the proposed Amended Complaint alleges that Jeanette Clouden aka Jeanette Duhaney ("Jeanette") is or was the head officer and managing agent of Rutland Realty and an officer of EPP.  *Id.* ¶¶ 13, 15.  Although Rutland Realty and EPP claim that the Duhaneys are not affiliated with Rutland Realty and the 986 Rutland Road property, Reply Mem. in Further Supp. of Mot. for J. on Pleadings, Dkt. 29, the proposed Amended Complaint alleges that the transfer of 986 Rutland Road from Jeanette to Rutland Realty in 2007 and the transfer from Rutland Realty to Nachlas Rutland LLC in 2018 were without fair consideration and that Sigal was the principal of both Rutland Realty and Nachlas Rutland LLC.  The proposed Amended Complaint adds that "[a]fter the date of the transfer of the 986 Rutland Road property to [Rutland Realty], [plaintiff] continued to work on behalf of [defendants], at 986 Rutland Road both at Rutland [Grocery] and in the residential parts of the building as well as at the other Duhaney [r]esidential [p]roperties."  PAC ¶ 36.

Moreover, as for the first factor under the "formal control" test, plaintiff alleges that all defendants, including Rutland Realty and EPP, "had the power and authority to . . . fire and hire" plaintiff.  *Id.* ¶ 50.  Second, plaintiff alleges that he "possessed no discretion whatsoever with respect to the hours, the schedule, which of the Duhaney Business[] locations he was to work on a particular day, and all other conditions of [p]laintiff's employment with [d]efendants," *id.* ¶ 56, and that defendants, including Rutland Realty and EPP, "had an arrangement and/or agreement to share [plaintiff's] services at the various Duhaney Businesses," *id.* ¶ 41, and "shared control of [plaintiff] and were [in] common control of him at all relevant times," *id.* ¶ 43.  Third, plaintiff alleges that defendants "jointly had the power to determine [plaintiff's] rate and method of payment," *id.* ¶ 38, and "had substantial control over [p]laintiff's wages, and over the unlawful policies and practices alleged herein," *id.* ¶ 40.

These allegations of the proposed Amended Complaint plausibly plead Rutland Realty's and EPP's status as plaintiff's employers.  Accordingly, I recommend that Rutland Realty's and EPP's motion for judgment on the pleadings, considered as directed to the proposed Amended Complaint, be denied, and plaintiff's motion to amend the Complaint pursuant to Rule 15(a) be granted.

### CONCLUSION

For the reasons stated above, I respectfully recommend that the Court deny plaintiff's motion for a default judgment, grant Rutland Realty's and EPP's cross-motions to vacate their defaults, deny Rutland Realty's and EPP's motion for judgment on the pleadings, and grant plaintiff leave to amend the Complaint.  Moreover, I respectfully recommend that plaintiff recover the reasonable attorneys' fees and costs incurred in connection with the motion for default judgment.  Any objections to the recommendations made in this Report must be submitted within fourteen days after filing of the Report and, in any event, no later than October 29, 2019.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. Proc. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit).  Plaintiff is hereby directed to serve copies of this Report and Recommendation upon Rutland Realty and EPP at their last known addresses, and to file proof of service with the Court.

```
        /s/
```
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
October 15, 2019

U:\#JAV 2019-2020\Clifton Dacas v. Vincent Duhaney, et al., 17-cv-03568 (ILG)\Final R&R.docx