UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
CLIFTON DACAS,                                          :
                                                       :
                              Plaintiff,               :
                                                       :           **REPORT AND**
              -against-                                :           **RECOMMENDATION**
                                                       :
VINCENT DUHANEY, JEANETTE                               :           17 Civ. 3568 (EK) (VMS)
CLOUDEN a/k/a JEANETTE DUHANEY,                         :
RUTLAND ROAD MEAT AND FISH, 986                         :
RUTLAND REALTY, LLC, 144 HOLDINGS                       :
LLC, EPP MANAGEMENT LLC and JOHN                        :
DOES 1-10,                                              :
                                                       :
                              Defendants.               :
-------------------------------------------------------- x

**Scanlon, Vera M., United States Magistrate Judge:**

Plaintiff Clifton Dacas ("Plaintiff") brings this action against Defendants Vincent

Duhaney ("Mr. Duhaney"), Jeanette Clouden a/k/a Jeanette Duhaney ("Ms. Clouden"), Rutland

Road Meat and Fish ("RRMF"), 986 Rutland Realty LLC ("Rutland Realty"), 144 Holdings LLC

("144 Holdings"), EPP Management LLC ("EPP") and John Does 1-10 (collectively,

"Defendants") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.; the

New York Labor Law ("NYLL") §§ 650 et seq., and 663; NYLL § 190 et seq.; and 12 New York

Codes, Rules and Regulations §§ 142-2.1, 142-2.2, 142-2.4, 142-2.7 and 142-2.9.  See ECF No.

70.

Before the Court, on referral from the Honorable Eric R. Komitee, is Rutland Realty and

EPP's ("Moving Defendants") motion for summary judgment.  See ECF No. 130.[1]  Plaintiff

---

[1] Although Moving Defendants filed a consolidated motion, at times the Court's analysis discusses Rutland Realty and EPP separately to take into account particular evidence pertaining to each.

opposed.  See ECF No. 131.  Moving Defendants replied.  See ECF No. 132.  For the following reasons, this Court respectfully recommends that the District Court grant Moving Defendants' motion.

## I.    Procedural History

Plaintiff commenced this action in June 2017.  See ECF No. 1.  Rutland Realty and EPP answered shortly thereafter.  See ECF No. 9.

Early on in this case, Rutland Realty and EPP denied that they ever employed Plaintiff, and the Court directed Plaintiff to consider whether he would stipulate to their dismissal from this action.  See ECF No. 13.  Plaintiff filed a letter indicating that he intended to file the stipulation as to at least one of the Moving Defendants, but he requested additional time to investigate.  See ECF No. 14.  The Court granted Plaintiff's request, but Plaintiff elected not to stipulate to the Moving Defendants' dismissal; Plaintiff and the Moving Defendants then participated in an unsuccessful mediation.  See ECF No. 15; Dkt. Entry 12/18/2017; Dkt. Entry 3/22/2018; ECF No. 21; Dkt. Entry 4/11/2018.

Meanwhile, the Clerk of the Court granted Plaintiff's request for entry of default against RRMF and 144 Holdings.  See ECF No. 20; Dkt. Entry 3/13/2018.  Plaintiff thereafter filed a default judgment motion against RRMF and 144 Holdings.  See ECF Nos. 22-23.

Although Plaintiff sought and was granted an enlargement of time to serve Mr. Duhaney and Ms. Clouden, Plaintiff never served them.  See Pl. 56.1 ¶ 6, annexed at ECF No. 131; ECF Nos. 7, 24-25, 27.

After Plaintiff's and Moving Defendants' unsuccessful mediation, Moving Defendants made an opposed motion for judgment on the pleadings.  See ECF Nos. 26, 28-29.  While the motion was pending, Moving Defendants' counsel withdrew.  See ECF Nos. 30, 32; Dkt. Entry

10/26/2018.  During the period in which Moving Defendants were without representation, Plaintiff requested, and the Clerk of the Court granted, an entry of default against them.  See ECF Nos. 34-35.  Plaintiff then moved for a default judgment against Moving Defendants.  See ECF Nos. 36-40, 43-46, 55.  Before Plaintiff's motion for default judgment against Moving Defendants was resolved, they retained counsel, who appeared and moved to set aside the default against them.  See ECF Nos. 41, 50, 54, 57, 66.  Moving Defendants submitted declarations from Rutland Realty's and EPP's principals stating that they had not employed Plaintiff.  See ECF No. 54.

Plaintiff moved for leave to file an amended complaint.  See ECF Nos. 64-65.  The Court granted Moving Defendants' motion to set aside entry of default; granted Plaintiff's request for leave to file an amended complaint; denied Moving Defendants' motion for judgment on the pleadings; denied Plaintiff's default-judgment motion against Moving Defendants; and awarded Plaintiff attorneys' fees and costs against Moving Defendants incurred in connection with making the default-judgment motion (with the amount of the award determined in subsequent motion practice).  See ECF No. 67, R&R adopted, ECF No. 69; ECF Nos. 79-81, 83-84, 93, 101, 108; Dkt. Entry 9/25/2020; ECF Nos. 109, 116-117.  As relevant here, in granting Moving Defendants' motion to vacate the entry of default, the Court noted that Moving Defendants had demonstrated a potentially meritorious defense through their submission of the principals' declarations that they had never employed Plaintiff.  See ECF No. 67 at 9-10, R&R adopted, ECF No. 69.  Plaintiff filed his amended complaint.  See ECF No. 70.  Moving Defendants answered.  See ECF Nos. 75-76.

In light of Plaintiff's filing of the amended complaint, the Court denied as moot the default-judgment motion that Plaintiff had brought against RRMF and 144 Holdings with leave

3

to renew.  See ECF No. 73.  After RRMF and 144 Holdings failed to answer or otherwise respond to Plaintiff's amended complaint, Plaintiff requested, and the Clerk of the Court granted, an entry of default against them.  See ECF Nos. 89, 91.  Plaintiff filed a default-judgment motion against RRMF and 144 Holdings, which is pending.  See Pl. 56.1 ¶ 7; ECF Nos. 94-97, 99-100, 102.

Meanwhile, Plaintiff and Moving Defendants performed discovery.  See, e.g., ECF Nos. 73, 82, 86-88, 90, 92, 103, 109, 112-114, 118-122.  After discovery closed, Moving Defendants commenced the instant summary-judgment motion practice.  See Dkt. Entry 2/4/2021; Dkt. Entry 3/29/2021; ECF Nos. 123-25.

Moving Defendants thereafter filed the instant fully briefed summary-judgment motion. See ECF Nos. 129-32.

## II.    Factual Summary

The following facts are drawn from the record and the parties' summary-judgment submissions as cited.[2]  It is undisputed only for the purposes of the instant motion that, as Plaintiff alleges, he suffered wage-and-hour violations under the FLSA and the NYLL while working as a general laborer/grocery clerk at one business and as a superintendent/porter at five buildings in Brooklyn, New York.  See ECF Nos. 130-132.  The Moving Defendants' motion argues that even if Plaintiff's wage-and-hour-violation allegations were true, a reasonable jury could not find that they were Plaintiff's employers for the purposes of FLSA and NYLL liability.

---

[2] The Court notes that Plaintiff and Moving Defendants alike used letters to mark their exhibits. In order to distinguish between them, the Court will hereinafter cite to Plaintiff's exhibits as "Pl. Exh. [letter]," see Pl. Exhs. A-G, annexed at ECF Nos. 131-4 through 131-10, and Moving Defendants' exhibits as "Def. Exh. [letter]," see Def. Exhs. A-F, annexed at ECF Nos. 130-6 through 130-11.

4

The Court will summarize Plaintiff's general allegations regarding his employment, see Section

II.a, infra, before turning in the next sections to the dispute as to whether an employer-employee

relationship existed between Moving Defendants and Plaintiff, see Section II.b-d, infra.

### a. Plaintiff's Allegations Of Wage-And-Hour Violations Suffered In Connection With His Work At One Business And Five Real Properties

According to Plaintiff, between April 2003 and December 2016, Plaintiff worked as a

general laborer/grocery clerk at RRMF, a grocery and deli operating out of a commercial space

at 986 Rutland Road, Brooklyn, New York 11212.  See Def. Exh. F at 2-6; Plaintiff's

Declaration ¶¶ 3-4, annexed at ECF No. 131-2 (hereinafter "Dacas Decl. ¶ [paragraph

number]"); see also ECF No. 70 ¶¶ 17-19.[3]  Plaintiff's general laborer/grocery clerk duties

included ensuring that produce, meat, fish and dry stocks were rotated and displayed on shelves;

unloading products from trucks; organizing stock rooms; cleaning cases and shelves; mopping

and sweeping the sales areas and stock rooms; and assisting in other duties as requested.  See

Dacas Decl. ¶ 6.

During the same period, Plaintiff worked as a superintendent/porter at 986 Rutland Road

and four other real properties in the neighborhood in connection with communal/hostel-style

apartments operated in those buildings.  See ECF No. 70 ¶¶ 20-22; Def. Exh. D ¶ 1; Def. Exh. E

¶ 1; Dacas Decl. ¶ 3.  Plaintiff's superintendent/porter duties included overall maintenance of the

five buildings and all areas related to the day-to-day maintenance operations of the communal

---

[3] The Court notes that, although Plaintiff's operative complaint alleges that RRMF dissolved as a corporation in 2012 and suggests that at least one other nonparty business called Kennedy Fried Chicken may have thereafter operated in the commercial space at 986 Rutland Road, Plaintiff testified at his deposition that he worked under the direction of Mr. Duhaney and Ms. Clouden at Defendant RRMF at 986 Rutland Road from 2003 through 2016.  Compare ECF No. 70 ¶¶ 32-33, 62-63, with Def. Exh. F at 39:2-6.

spaces.  See Dacas Decl. ¶ 5.  This entailed, inter alia, repairing and maintaining structures such as showers, sinks, appliances, doors/cabinets, walls and building exteriors; preparing units for new tenants; 24-hour emergency maintenance; scheduling and completing preventative maintenance programs; completing ground work such as garbage pick-ups; sweeping; light landscaping; and coordinating special projects as directed.  See id. ¶ 5.  The addresses of the five properties at which Plaintiff performed these superintendent/porter duties were:

> (1) 986 Rutland Road, Brooklyn, New York 11212 ("Building One");
> (2) 149 East 96th Street, Brooklyn, New York 11212 ("Building Two");
> (3) 326 East 94th Street, Brooklyn, New York 11212 ("Building Three");
> (4) 144 East 93rd Street, Brooklyn, New Yok 11212 ("Building Four"); and
> (5) 126 East 94th Street, Brooklyn, New York 11212 ("Building Five").

See ECF No. 70 ¶ 21; Dacas Decl. ¶ 7.

Plaintiff alleges that, at all relevant times, in performing his general laborer/grocery clerk duties at Building One and his superintendent/porter duties at all five buildings, he worked approximately 140 hours a week (seven days a week between 19 and 20 hours per day), and in exchange, received a predetermined $220 weekly salary and free lodging in a room at Building Three.  See Def. Exh. D ¶ 3; Def. Exh. E ¶ 3; Dacas Decl. ¶¶ 8-14; ECF No. 70 ¶¶ 67, 77. Plaintiff alleges that this compensation did not constitute due payment for all the hours he worked or overtime compensation under the FLSA and NYLL.  See Def. Exh. D ¶ 3; Def. Exh. E ¶ 3; Dacas Decl. ¶¶ 8-14; ECF No. 70 ¶¶ 65-77.  Plaintiff also alleges that he never received records pertaining to his wages and hours worked as required by law.  See Def. Exh. D ¶ 3; Def. Exh. E ¶ 3; Dacas Decl. ¶¶ 16-18; ECF No. 70 ¶¶ 79-80.

Plaintiff's operative complaint alleges without any individualized detail that all named Defendants, Rutland Realty and EPP included, jointly employed him such that they are all liable for Plaintiff's alleged wage-and-hour claims.  See ECF No. 70.  Plaintiff does not attempt to

show through allegation or evidence the allocation of his working hours between the two jobs: that is, how many hours of his alleged work were performed in his capacity as a general laborer/grocery clerk at RRMF which operated in a commercial space at Building One, and how many hours were performed as the superintendent/porter at the five buildings.  Plaintiff does not provide allegations or evidence as to how his alleged hours worked as a superintendent/porter were split among the five buildings.  See ECF No. 131, passim.

### b.  Evidence Regarding Whether Moving Defendants Were Plaintiff's Employers

The Court will summarize the facts relevant to the instant motion, i.e., whether Moving Defendants and Plaintiff had an employer-employee relationship.

### i.  Mr. Duhaney And Ms. Clouden Were The Only Persons Who Directly Gave Plaintiff Assignments, Gave Him Work Or Told Him What To Do In Connection With His Employment

It is undisputed on this motion that, as Plaintiff testified at his deposition, during his employment from 2003 through 2016, Mr. Duhaney and Ms. Clouden were the only persons who gave him assignments, gave him work or told him what to do.  See Def. Exh. F at 36:2-21. Plaintiff's responses to Moving Defendants' interrogatories identified only Mr. Duhaney and Ms. Clouden as persons with whom Plaintiff communicated about his employment.  See Def. Exh. D ¶ 5; Def. Exh. E ¶ 5.  Plaintiff testified at his deposition that, although Mr. Duhaney and Ms. Clouden exclusively directed his employment as described, he lacked knowledge regarding whether Mr. Duhaney and Ms. Clouden did business with other parties or had other parties manage their business affairs.  See Pl. Exh. G at 44:8-25.

### ii.  The Parties Dispute Whether Rutland Realty Controlled Plaintiff's Employment Given That It Purchased Building One In 2007

Plaintiff vigorously argues that Rutland Realty controlled Plaintiff's employment despite

Plaintiff's testimony that Mr. Duhaney and Ms. Clouden exclusively directed his work at all relevant times.

In a sworn declaration submitted on this motion, Plaintiff elaborates that it is his "understanding that [Rutland Realty and other D]efendants had an agreement and/or an arrangement to share [his] services at the [p]roperties" and that, "[t]o the extent ownership of any of the [p]roperties may have changed while I was working there, it never changed my job and I continued to work at all of the [p]roperties through December 2016." Dacas Decl. ¶ 15. As relevant to the instant motion, Plaintiff's "understanding" that Rutland Realty had an arrangement with Mr. Duhaney and Ms. Clouden to share his services pertains to Rutland Realty's purchase of Building One in 2007. See ECF No. 131.

As a preliminary matter, it is undisputed that at some point prior to 2007 (the record does not make clear when), Ms. Clouden and nonparty Claudine Muir ("Ms. Muir") jointly owned Building One. See Pl. Exh. B. In 2007, they sold Building One to Rutland Realty while nonparty Stephen Gillings ("Mr. Gillings") was Rutland Realty's sole member. See Pl. Exh. B; Def. Exh. F at 31:9-25, 34:4-20. There is no evidence that Ms. Clouden and nonparty Ms. Muir owned or were members of Rutland Realty. See Pl. Exh. B; Pl. Exh. F at 52:1-10. Building One's 2007 sale did not change the general laborer/grocery clerk work Plaintiff had been performing at RRMF in Building One's commercial space or the superintendent/porter work he had been performing in its residential space since 2003, and he continued working in these same capacities at Building One through December 2016. See Def. Exh. D ¶ 1; Def. Exh. E ¶ 1; Dacas Decl. ¶¶ 3, 7, 15, 19.

Additional evidence offered by other witnesses is unrefuted by any evidence offered by Plaintiff, and at times, Plaintiff's testimony even corroborates these witnesses and their evidence.

8

It is undisputed that, in January 2017, nonparty Mr. Gillings assigned his 100% interest in Rutland Realty to nonparty Shea Sigal ("Mr. Sigal") in exchange for "ten dollars ($10.00) and other good and valuable consideration." See Pl. Exh. C.  Nonparty Mr. Sigal testified at his deposition that he met with nonparty Mr. Gillings at various times in 2016 and 2017 in connection with the building purchase and that, at times, they met in person at Building One. See Pl. Exh. F at 34:2-20.  Plaintiff testified at his deposition that he first met Mr. Sigal in 2016 or 2017, when Mr. Sigal visited Building One in connection with the purchase (Plaintiff referenced Mr. Sigal as "Shane" or "Shea" in his testimony, and the parties agree he was referring to Mr. Sigal).  See Pl. 56.1 ¶ 4; Pl. Exh. F at 36:11-37:3, 37:16-38:2, 38:9-19.  Plaintiff testified that he did not believe that Mr. Sigal had anything to do with RRMF at Building One at any time.  See Pl. Exh. F at 37:8-11.

Nonparty Mr. Sigal testified at his deposition that he had not worked at or rented Building One prior to acquiring it with his purchase of Rutland Realty from nonparty Mr. Gillings.  See Pl. Exh. F at 34:21-25.   Nonparty Mr. Sigal further testified that he had no knowledge that Mr. Duhaney, Ms. Clouden and nonparty Ms. Muir had ever been members of Rutland Realty, and there is no evidence in the record that they ever were (Ms. Clouden and nonparty Ms. Muir personally sold Building One to Rutland Realty in 2007).  See Pl. Exh. B; Pl. Exh. F at 52:2-10.

In a sworn declaration, nonparty Mr. Sigal stated that Rutland Realty did not employ, supervise or otherwise use Plaintiff's labor or services in any way between 2003 and 2016.  See Shea Sigal Declaration ¶ 3, annexed at ECF No. 130-3 (hereinafter "Sigal Decl. ¶ [paragraph number]").  Nonparty Mr. Sigal further stated that Rutland Realty's only connection to Plaintiff was that it previously rented Building One "to Plaintiff's alleged employers, [Mr.] Duhaney and

9

[Ms.] Clouden . . . and their company, Defendant [RRMF]." Sigal Decl. ¶ 4.[4]

In 2018, Rutland Realty transferred Building One to nonparty Nachlas Rutland LLC when the property was refinanced. See Pl. Exh. D; Pl. Exh. F at 52:11-25. Mr. Sigal, Mr. Sigal's wife and nonparty Efraim Langsam were nonparty Nachlas Rutland LLC's three members. See Pl. Exh. F at 52:20-25.

Although Plaintiff testified at his deposition that he was not familiar with Rutland Realty, he takes the legal position in this motion that Rutland Realty must have employed him from 2007 onward because Rutland Realty did not fire him or require Mr. Duhaney and Ms. Clouden to fire him once it became Building One's owner. See Def. Exh. F at 37:12-14; Dacas Decl. ¶ 21. In summary, Plaintiff asks: "If [Rutland Realty] was not my employer [after its 2007 purchase of Building One], why did it have me work at [Building One]? It certainly could have fired me." Dacas Decl. ¶ 21.

### iii. The Parties Dispute Whether EPP Controlled Plaintiff's Employment Given That It Served As A Nonparty LLC's Managing Agent At Building Two After The Nonparty LLC Bought Building Two In 2015

Plaintiff vigorously argues that EPP controlled Plaintiff's employment despite Plaintiff's own testimony that Mr. Duhaney and Ms. Clouden exclusively directed his work at all relevant times.

As with Rutland Realty, Plaintiff's position with respect to EPP is described in his sworn declaration stating that it is his "understanding that [EPP and other D]efendants had an

---

[4] Nonparty Mr. Sigal testified at his deposition that he knew Ms. Clouden and that he would see her "from time to time" or "constantly" on the block after his acquisition of Building One through his purchase of Rutland Realty. See Pl. Exh. F at 48:1-16. Although the record is silent as to how nonparty Mr. Sigal knew Ms. Clouden, this Court notes from a review of the record that in 2015, as discussed below, Ms. Clouden sold Building Two in 2015 to a nonparty LLC of which nonparty Mr. Sigal was the sole member. See Section II.b.iii, infra.

agreement and/or an arrangement to share [his] services at the [p]roperties" and that, "[t]o the extent ownership of any of the [p]roperties may have changed while I was working there, it never changed my job and I continued to work at all of the [p]roperties through December 2016." Dacas Decl. ¶ 15.   As relevant to the instant motion, Plaintiff's "understanding" that EPP had an arrangement with Mr. Duhaney and Ms. Clouden to share his services at Building Two pertains to nonparty Y&S E96 Holdings LLC's ("Y&S") purchase of Building Two in 2015 and nonparty Y&S's subsequent use of EPP as its managing agent for Building Two.  See ECF No. 131.

It is undisputed that, from 2006 until 2015, Ms. Clouden and nonparty Ms. Muir personally jointly owned Building Two.  See Pl. Exh. A.  In 2015, they sold Building Two to nonparty Y&S; nonparty Mr. Sigal was Y&S's sole member and signed the documents pertaining to the purchase on Y&S's behalf.  See id.  According to Plaintiff, Building Two's 2015 sale did not change the superintendent/porter work he had been performing at Building Two since 2003, and he continued working in that same capacity there through December 2016. See Def. Exh. D ¶ 1; Def. Exh. E ¶ 1; Dacas Decl. ¶¶ 3, 7, 15, 19.

The record includes one document from after Plaintiff's employment, a New York City Department of Housing Preservation & Development ("HPD") Registration Summary Report for Building Two.  See Pl. Exh. E.  Retrieved on June 9, 2017, the HPD Registration Summary Report cited Building Two's last registration date as August 2, 2016, and listed EPP as Building Two's managing agent with a business address at 5412 16th Avenue, Brooklyn, New York 11204, and nonparty Ms. Muir as the address's "head officer" and Ms. Clouden as its "officer." See Pl. Exh. E.  The report does not explain the significance of nonparty Ms. Muir's designation as Building Two's "head officer" or Ms. Clouden's designation as its "officer" with respect to

their relationship to, work with or work for Building Two's listed registered owner nonparty Mr. Sigal or managing agent EPP.  See Pl. Exh. E.

In a sworn declaration submitted by EPP's managing member, nonparty Chesky Engel ("Mr. Engel"), Mr. Engel states that EPP "did not employ, supervise or otherwise utilize in any way the labor or services of Plaintiff directly, indirectly, in conjunction with, or jointly with any other person or entity."  See Chesky Engel Declaration ¶ 3, annexed at ECF No. 130-4 (hereinafter "Engel Decl. ¶ [paragraph number]").  Although nonparty Mr. Engel does not indicate the time period for which he makes this statement, he adds that, "[t]o the best of [his] knowledge, information and belief, [EPP's] only connection to this action is that [EPP] once briefly employed [nonparty] Shea Sigal, the principal of [Rutland Realty]."  See Engel Decl. ¶ 4. Nonparty Mr. Sigal confirmed at his deposition that he worked for EPP as a property manager for nine or ten Brooklyn properties between 2014 and 2018, but the record does not state that one of those properties was Building Two or any of the other four properties at which Plaintiff claims he worked.  See Pl. Exh. F. at 60:23-61:25.

An HPD Registration Summary Report retrieved on December 22, 2020, stated that, as of Building Two's September 26, 2020, registration date, nonparty Y&S was Building Two's "corporation," nonparty NPG Management LLC was its managing agent, and nonparty Mr. Sigal was its officer.  See Pl. Exh. E.

Although Plaintiff testified at his deposition that he had never heard of EPP, he argues that EPP must have employed him from 2015 onward because EPP did not fire him or require Mr. Duhaney and Ms. Clouden to fire him once it became nonparty Y&S's managing agent at Building Two.  See Def. Exh. F at 38:3-8; Dacas Decl. ¶ 21; ECF No. 131-1.

12

### c. Building Three

Plaintiff submitted in evidence an HPD Registration Summary Report retrieved in June 2017 showing that, in July 2011, Ms. Clouden was registered as the officer and managing agent of Building Three, which is where Plaintiff had free lodging in connection with his employment. See Pl. Exh. E at P-0025.  The record does not list Rutland Realty or EPP in any capacity, and there is no record evidence showing a connection between Rutland Realty or EPP with Building Three.

### d. Buildings Four And Five

Other than Plaintiff's allegations and evidence that Building Four and Building Five were among the addresses at which he performed his superintendent/porter duties at Mr. Duhaney and Ms. Clouden's direction, the record does not include information with respect to Building Four and Building Five.  As relevant here, there is no evidence showing a connection between Rutland Realty or EPP and Building Four or Building Five.

## III.    Legal Standards

### a. Summary Judgment

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005).  "It is the movant's burden to show that no genuine factual dispute exists," and a court "must resolve all ambiguities

and draw all reasonable inferences in the non-movant's favor." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  If the movant has met its burden, its opponent must "do more than simply show that there is some metaphysical doubt as to the material facts" and, toward that end, "must come forward with specific facts showing that there is a genuine issue for trial."  Exp.-Imp. Bank of U.S. v. Agricola Del Mar BCS, 334 F. App'x 353, 354 (2d Cir. 2009) (citation omitted).  The non-movant may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Fed. Trade Comm'n v. Moses, 913 F.3d 297, 305 (2d Cir. 2019) (citation omitted).  "Something more than a fanciful allegation is required to justify denying a motion for summary judgment when the moving party has met its burden of demonstrating the absence of any genuine issue of material fact."  Gordon v. Gen. Prop. Mgmt. Assocs., Inc., 496 F. Supp. 3d 830, 835 (S.D.N.Y. 2020) (quoting Contemporary Mission v. United States Postal Serv., 648 F.2d 97, 107 (2d Cir. 1981)).  "A 'bare assertion' that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment."  Id.; Vasto v. Credico (USA) LLC, No. 15 Civ. 9298 (PAE), 2017 WL 4877424, at *9 (S.D.N.Y. Oct. 27, 2017) (rejecting the plaintiffs' argument that a contractor "must have" exercised control over its subcontractor's employees because all of the contractor's subcontractors allegedly adhered to a similar schedule: "Because plaintiffs fail to provide record support for this factual assertion, . . . it may not be credited in evaluating the summary judgment motion.").  To the extent a party advances an assertion at summary judgment "simply as [his] understanding, it is not relevant."  Thomas v. Stone Container Corp., 922 F. Supp. 950, 957 (S.D.N.Y. 1996); see, e.g., United States v. Private Sanitation Indus. Ass'n, 44 F.3d 1082, 1084 (2d Cir. 1995) (finding that an affidavit stating a fact "to the best of the [affiant's] knowledge" insufficient to create an issue of

fact).  The issue is whether a fact has been established, not a party's state of mind as to the fact.  See Thomas, 922 F. Supp. at 957.  A district court "must ask not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  Simpson v. City of N.Y., 793 F.3d 259, 265 (2d Cir. 2015).  It is not appropriate for the court to make credibility assessments or resolve conflicting versions of the events presented; these are essential questions for a jury.  See id.

### b.  Joint Employer Doctrine And Formal And Functional Control Tests

"The joint employer doctrine applies where there is no single integrated enterprise, but where two employers handle certain aspects of their employer-employee relationship jointly." Fowler v. Scores Holding Co., 677 F. Supp. 2d 673, 681 (S.D.N.Y. 2009) (quotation omitted); see Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 198 (2d Cir. 2005) ("A conclusion that employers are 'joint' assumes that they are separate legal entities, but that they . . . handle certain aspects of their employer-employee relationship jointly.") (quoting Clinton's Ditch Coop. Co. v. NLRB, 778 F.2d 132, 137 (2d Cir. 1985)).  "A joint employer relationship may be found to exist where there is sufficient evidence that the respondent had immediate control over the other company's employees."  Fowler, 677 F. Supp. 2d at 681 (citation & quotation omitted).

In determining whether an entity falls under the definition of an "employer" pursuant to the FLSA, the court's "inquiry focuses on the 'economic reality' of the relationship between the purported employer and the worker[] in question."[5]  Chen v. DG & S NY, Inc., 406 F. Supp. 3d

_____

[5] The parties agree that the same standard applies for the purposes of determining whether Moving Defendants were Plaintiff's joint employers pursuant to the FLSA and NYLL.  See ECF No. 130-2 at 5; ECF No. 131-1 at 7; Gallego v. Adyar Ananda Bhavean Corp., No. 16 Civ. 4631 (AJN), 2018 WL 4735710, at *4 (S.D.N.Y. Sept. 30, 2018) (noting that "courts in this Circuit have consistently interpreted the definition of 'employer' under the [NYLL] coextensively with

216, 221 (E.D.N.Y. 2016) (quoting Barfield v. N.Y. City Health & Hosps. Corp., 537 F. 3d 132,

141-42 (2d Cir. 2008)).  "[T]he economic reality test turns on objective economic realities, not

subjective beliefs[.]"  Hernandez v. Sikka, No. 17 Civ. 4792 (SJF) (SIL), 2020 WL 1083706, at

*12 (E.D.N.Y. Mar. 6, 2020) ("The mere fact that [the p]laintiffs thought [the moving defendant]

was a 'boss' . . . is not sufficient to support a finding that he was an employer under the

economic realities test[.]").  "Because the laborer has the burden of proof, to prevail he must

establish the joint-employment inference by a preponderance of the evidence."  Martinez-

Mendoza v. Champion Intern. Corp., 340 F.3d 1200, 1209 (11th Cir. 2003); see Chichinadze v.

BG Bar Inc., 517 F. Supp. 3d 240, 255 (S.D.N.Y. 2021) ("[T]o establish liability under either

[the FLSA or NYLL], a plaintiff must establish that the defendant was plaintiff's 'employer.'");

Napoli v. 243 Glen Cove Ave. Grimaldi, Inc., 397 F. Supp. 3d 249, 254 (E.D.N.Y. 2019)

("Based upon all of the evidence, [p]laintiff has failed to prove by a preponderance of the

evidence that [the defendant] acted as an employer under either the FLSA or NYLL."); Bedasie

v. Mr. Z Towing, Inc., No. 13 Civ. 5453 (CLP), 2017 WL 1135727, at *51 (E.D.N.Y. Mar. 24,

2017) ("[T]he [c]ourt holds that plaintiffs failed to establish by a preponderance of the evidence

that [the defendant] was an 'employer' within the meaning of either the FLSA or NYLL, and

therefore [the defendant] is not liable for any violations under the FLSA or NYLL."); Medina v.

3C Constr. Corp., No. 02 Civ. 23090 (JAL), 2005 WL 8156724, at *6 (S.D. Fla. Aug. 24, 2005)

("Plaintiffs have the burden of proof to establish the joint-employment inference by a

preponderance of the evidence."); Sibbald v. Johnson, 294 F. Supp. 2d 1173, 1177 (S.D. Cal.

2003) (finding that the defendant's evidence met its summary judgment burden to show that the

the definition used by the FLSA") (quoting Inclan v. N.Y. Hosp. Grp., Inc., 95 F. Supp. 3d 490,
511 (S.D.N.Y. 2015)).

plaintiff was not an employee such that the plaintiff was required to come forward with evidence to show that there was a genuine issue of material fact with respect to joint employment).

"This economic reality test, which applies equally to the FLSA and NYLL, asks how much authority the 'employer' exercised over the 'employee[].'" Chen, 406 F. Supp. 3d at 221 (citation omitted). The Second Circuit has treated employment for FLSA purposes "as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." Barfield, 537 F.3d at 141-42. "The key question is control, and, as relevant here, the Second Circuit has developed tests to measure both 'formal' control and 'functional' control, depending on the factual circumstances of a particular case." Zhao v. Ke Zhang Inc., No. 18 Civ. 6452 (EK) (VMS), 2021 WL 1210369, at *4 (E.D.N.Y. Mar. 31, 2021) (citing & quoting Barfield, 537 F.3d at 143). Applying these tests on a motion for summary judgment, courts must ask whether a reasonable jury could conclude that a plaintiff was a putative joint employer's employee. See Agerbrink v. Model Serv. LLC, 787 F. App'x 22, 25 (2d Cir. Sept. 24, 2019).

### i. The Carter Factors And Formal Control

Four factors set forth by the Second Circuit in Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984), have been considered helpful to an assessment of a putative employment relationship on a theory of formal control. See Zhao, 2021 WL 1210369, at *4. They are "whether the alleged employer (1) had the power to hire and fire the employee[], (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. (quoting Carter, 735 F.2d at 12)); see Fernandez v. HR Parking Inc., 407 F. Supp. 3d 445, 455 (S.D.N.Y. 2019) (finding that an inference could be drawn that corporate defendants had some control over the method of plaintiff's payment from the fact that events worked for the corporate

defendants were recorded and paid differently than those worked for others); Gallego, 2018 WL 4735710, at *4 (finding that the defendant was not the plaintiffs' employer because, inter alia, there was "no indication that [the defendant] was involved . . . in determining rates of pay"). None of these so-called Carter factors is dispositive such that courts may apply more expansive tests if appropriate.  See Tapia v. BLCH 3rd Ave. LLC, 906 F.3d 58, 61 (2d Cir. 2018); Barfield, 537 F.3d at 142-43 (quoting Brock v. Superior Care, Inc., 840 F.2d 1054, 1058-59 (2d Cir. 1988)); Zhao, 2021 WL 1210369, at *4 ("These factors are sufficient, but not necessary, to establish employer status under the FLSA."); Gil v. Pizzarotti, LLC, No. 19 Civ. 3497 (MKV), 2021 WL 1178027, at *5 (S.D.N.Y. Mar. 29, 2021) ("The Second Circuit has made clear that while satisfaction of the formal control factors can be sufficient to establish employment status, it is not necessary.  Even if a putative joint employer did not exercise formal control, it may nevertheless have exercised sufficient functional control over a worker to satisfy the FLSA definition of employer.") (citations & quotations omitted).

To meet the first Carter factor, a plaintiff must show that the putative joint employer had the power to hire and fire.  See, e.g., Tapia, 906 F.3d at 61 (finding that the district court did not err in finding on summary judgment that the first factor was not satisfied where the appellant admitted that there was no direct evidence that the putative joint employer had the power to hire or fire employees); Monzano-Moreno v. Libqual Fence Co., No. 18 Civ. 161 (MKB) (AKT), 2021 WL 730663, at *10 (E.D.N.Y. Feb. 5, 2021) ("With respect to firing, [the d]efendants have offered little evidence on this issue presumably, in part, because neither [of the plaintiffs] was fired."), R&R adopted, 2021 WL 688295 (E.D.N.Y. Feb. 23, 2021); Vasto, 2017 WL 4877424, at *9 (declining to credit the plaintiffs' argument on summary judgment that a contractor "must have" exercised control where the plaintiffs failed to provide "record support for this factual

assertion").  "Mere influence on hiring is not sufficient to find that this factor has been met."

Fernandez, 407 F. Supp. 3d at 452 ("There is no evidence, however, that the [corporate

d]efendants accepted or reviewed applications . . . or made the final decisions that an applicant

should be hired.").

      With respect to the second Carter factor, "[t]he more supervision and control an entity

exercises, the more likely it is an employer."  Fernandez, 407 F. Supp. 3d at 453 (citation

omitted); see Tapia, 906 F.3d at 62 (holding that it was not clear error to find that the second

Carter factor was not satisfied where the plaintiffs "did not testify that [the defendant] controlled

work schedules or other personnel decisions, or that [the defendant] was personally aware of [the

plaintiffs'] hours or other conditions of employment"; where the evidence showed that another

defendant "was the one who managed overall operations"; and the plaintiffs confirmed that that

other defendant "was the one that set their work schedules"); Monzano-Moreno, 2021 WL

730663, at *11-12 (finding that where, among other things, it was undisputed that the plaintiffs

"never had any conversations with [the defendant] and its employees regarding the terms of their

employment[,]" the second formal control factor weighed against a finding of joint employment),

R&R adopted, 2021 WL 688295.  "[J]oint employer status may be found even where control is

exercised only occasionally."  Vasto, 2017 WL 4877424, at *9 (internal quotation marks &

citations omitted).

      The third Carter factor asks whether a putative joint employer determines pay rates.  See

Vasto, 2017 WL 4877424, at *9.  "To be sure, any company A that provides revenue to company

B affects what company B pays its employees, but the test is whether a putative joint employer

determines pay rates, not whether it affects them."  Jean-Louis v. Metropolitan Cable Commc'ns,

Inc., 838 F. Supp. 2d 111, 129-30 (S.D.N.Y. 2011) (To infer joint employment from a revenue

relationship "'would dramatically expand the FLSA to subsume traditional independent contractor relationships.'") (citing & quoting Jacobson v. Comcast Corp, 740 F. Supp. 2d 683, 692 (D. Md. 2010)); see Tafalla v. All Fla. Dialysis Serv., Inc., No. 09 Civ. 562 (JFM), 2009 WL 151159, at *7 (S.D. Fla. Jan. 21, 2009) (concluding that payments from a hospital to a contractor, which the contractor uses to pay its employees does not amount to the hospital's control over the employees' pay). A key question in this regard is "whether [the putative joint employer] had the authority to sign paychecks through the relevant [employment] period." Hugee v. SJC Grp., Inc., No. 13 Civ. 423 (GBD), 2013 WL 4399226, at *7 (S.D.N.Y. Aug. 14, 2013).

As to the fourth Carter factor pertaining to whether a putative joint employer maintained employment records, "[t]he employment records 'most relevant' to FLSA payment obligations are those concerning 'hours worked.'" Godlewska v. HDA, 916 F. Supp. 2d 246, 262 (E.D.N.Y. 2013) (citing & quoting Barfield, 537 F.3d at 144)); see Shiflett v. Scores Holding Co., 601 F. App'x 28, 31 (2d Cir. Feb. 19, 2015) (finding the plaintiff "incapable of demonstrating that there is a genuine issue of material fact regarding whether [the defendant could] be held liable under the joint employer doctrine" because, inter alia, there was no evidence of any "records pertaining to [the employee] held by [the defendant]"). Other such records may "include an employee's personnel files, time sheets, pay stubs, and government employment forms." Hugee, 2013 WL 4399226, at *7.

### ii. The Zheng Factors And Functional Control

In Zheng v. Liberty Apparel Co., 355 F.3d 61 (2d Cir. 2003), where an entity had hired contractors to perform work on its behalf, the Second Circuit set forth a six-factor test relevant to an assessment of a putative employment relationship on a theory of functional control. See Zhao, 2021 WL 1210369, at *4 (citing Zheng, 355 F.3d at 72). "The functional control test is

20

most relevant in the context of subcontractor relationships." Gil, 2017 WL 1178027, at *5 (citations & quotations omitted). Although "typical outsourcing relationships" are "generally not indicative of joint employment," the Second Circuit has noted that "Zheng contemplates arrangements under which the totality of circumstances demonstrate that workers formally employed by one entity operatively function as the joint employees of another entity, even if the arrangements were not purposely structured to avoid FLSA obligations." Barfield, 537 F.3d at 146. The six Zheng factors are (1) whether the putative employer's premises and equipment were used for the plaintiff's work, (2) whether the entities or individuals that contracted work from the putative employer had a business that shifted from one putative joint employer to another, (3) the extent to which a plaintiff performed a discrete line-job that was integral to the putative joint employer's process of production, (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes, (5) the degree to which the putative joint employer or its agents supervised the plaintiff's work, and (6) whether the plaintiff worked exclusively or predominantly for the putative joint employer. See Zheng, 355 F.3d at 72.

The first Zheng factor asks whether a putative joint employer's premises and equipment were used for a plaintiff's work. Although the factor is "relevant because the shared use of premises and equipment may support the inference that a putative joint employer has functional control over the [plaintiff's] work[,]" the Second Circuit has cautioned that "shared premises" are not "anything close to a perfect proxy for joint employment (because they are . . . perfectly consistent with a legitimate subcontracting relationship)[.]" Id. at 72. Further, "the fact that one entity is the other's landlord 'do[es] not suggest the lack of an arm's length relationship between the two entities.'" Dobrosmylov v. DeSales Media Grp., Inc., 532 F. Supp. 3d 54, 62 (E.D.N.Y.

2021) (quoting Geraci v. Rest. at Apple Greens, Inc., No. 16 Civ. 1385 (BKS), 2019 WL 1386318, at *14 (N.D.N.Y. Mar. 27, 2019)).  Courts have generally declined to find that a landlord-tenant relationship alone establishes that the landlord employed a tenant's employees for the purposes of FLSA liability.  See Farmer v. Fzoad.com Enters. Inc., No. 17 Civ. 9300 (GBD) (OTW), 2020 WL 6530787, at *3 (S.D.N.Y. Aug. 5, 2020) (rejecting inference that the landlord defendant controlled the plaintiff's employment to grant motion to dismiss complaint alleging that the landlord controlled the plaintiff's employer's sublease: "By [p]laintiff's logic, any landlord could be considered an 'employer' of all employees located in the landlord's space."), R&R adopted, 2020 WL 5569581 (S.D.N.Y. Sept. 17, 2020); Galvan v. Caviness Packing Co., Inc., 546 F. Supp. 2d 371, 377 (N.D. Tex. 2008) ("[Moving d]efendants have provided evidence that [one of them] is merely the lessor of some assets and real estate used by [the plaintiffs' employer] . . . . Plaintiffs have presented no evidence that [the moving defendants] act directly or indirectly in the interest of an employer in relation to the employee and should therefore be considered 'employers' under the FLSA.  [Moving d]efendants' motion for summary judgment that the[y] are not employers under the FLSA is [granted]."); see also Patel v. Wargo, 803 F.2d 632, 637 (11th Cir. 1986) (finding that a district court had not committed clear error in determining that the company leasing a building to a business was not an employer of the plaintiff where, among other things, "there [was] no suggestion that [the corporate lessor] was responsible for the day-to-day operations of [the plaintiff's employer] or had anything to do with [the employer's] employees"); Vaughan v. M-Entm't Prop., LLC, No. 14 Civ. 914 (SCJ), 2016 WL 7365201, at *17 (N.D. Ga. Mar. 15, 2016) ("If this [c]ourt were to hold [the defendant] to be a joint employer, then any and every landlord would be considered a joint employer merely because they rent a building to a company.  Such a situation is obviously

22

not what the FLSA contemplates.").  Yet, "the factfinder can use [shared premises] as a starting point in uncovering the economic realities of a business relationship."  Zheng, 355 F.3d at 72; see Zavala v. PEI Elec. Servs. Grp. Inc., No. 20 Civ. 9437 (PAE) (GWG), 2022 WL 2312794, at *9 (S.D.N.Y. June 28, 2022) (finding that the phrase "putative joint employer's premises" is "logically read" to require that the putative joint employer maintained at least some possessory interest in the premises at issue), R&R adopted, 2022 WL 2712853 (S.D.N.Y. July 13, 2022); Fernandez, 407 F. Supp. 3d at 456 (finding that the factor can support joint employment if it would have been "impossible for [a plaintiff] to do [his] job if [he] were not regularly [at the allegedly shared] premises").

An analysis of the second Zheng factor—whether the entities or individuals that contracted work from the putative employer had a business that shifted from one putative joint employer to another—turns on whether a plaintiff's employer depended entirely on the putative joint employer.  See Greenawalt v. AT&T Mobility LLC, 642 F. App'x 36, 39 (2d Cir. Mar. 14, 2016).  In such a situation, the factor supports a finding of functional control.  See id. at 38.  On the other hand, where a plaintiff works for a business organization that assigns him to perform work for various contractors, "this factor weighs against joint employment."  Fernandez, 407 F. Supp. 3d at 457 ("This is not a situation . . . where [the plaintiff] existed only to serve [the alleged joint employer].") (citation & quotation omitted); Hugee, 2013 WL 4399226, at *8 (finding the second Zheng factor unmet when "[the p]laintiff could work at jobs unrelated to [the alleged contractor]").

The third Zheng factor asks about the extent to which a plaintiff performed a discrete line-job that was integral to the putative joint employer's process of production; it is examined on a spectrum.  "On one end of the spectrum lies piecework on a producer's premises that

23

requires minimal training or equipment, and . . . [o]n the other end of the spectrum lies work that is not part of an integrated production unit, that is not performed on a predictable schedule, and that requires specialized skills or expensive technology." Zheng, 355 F.3d at 73. The factor "might apply with somewhat less vigor where . . . the parties are engaged in providing a service rather than manufacturing a product." Jean-Louis, 838 F. Supp. 2d at 134. "Some courts 'have questioned whether this factor translates well outside of the production line employment situation.'" Monzano-Moreno, 2021 WL 730663, at *15 (quoting Fernandez, 407 F. Supp. 3d at 457-58), R&R adopted, 2021 WL 688295.

As relevant here, the question with respect to whether responsibility under the contracts could pass from one subcontractor to another without material changes pursuant to the fourth Zheng factor is "whether the same employees would continue to do the same work in the same place regardless of who has responsibility for the contract." Greenawalt, 642 F. App'x at 39 (internal citations & quotations omitted). "In such circumstances, it is difficult not to draw the inference that a subterfuge arrangement exists." Zheng, 355 F.3d at 74 (emphasis in original). "Where, on the other hand, employees work for an entity (the purported joint employer) only to the extent that their direct employer is hired by that entity, this factor does not in any way support the determination that a joint employment relationship exists." Zheng, 355 F.3d at 74; Monzano-Moreno, 2021 WL 730663, at *10 (quoting Fernandez, 407 F. Supp. 3d at 458-59), R&R adopted, 2021 WL 688295.

The inquiry under the fifth Zheng factor regarding the degree to which the putative joint employer or its agents supervised the plaintiff's work is "'largely the same' as the inquiry under the second Carter [formal control] factor and is the most relevant factor in determining whether a purported joint employer exercises functional control over plaintiffs." Godlewska, 916 F. Supp.

2d at 264 (quoting Jean-Louis, 838 F. Supp. 2d at 127 n.7); see Fernandez, 407 F. Supp. 3d at

459 (citing Martin v. Sprint United Mgmt. Co., 273 F. Supp. 3d 404, 433 (S.D.N.Y. 2017)).

"[S]upervision with respect to contractual warranties of quality and time of delivery has no

bearing on the joint employment inquiry[.]" Jean-Louis, 838 F. Supp. 2d at 127 n.7 (quoting

Zheng, 355 F.3d at 75); see Godlewska, 916 F. Supp. 2d at 264-65 (finding that the defendants

"did not supervise [the] plaintiffs' work, manage plaintiffs on a day-to-day basis, or evaluate

plaintiffs' performance" where the defendants "merely exercised quality control to ensure that

[the subcontractor] delivered quality service and complied with legal requirements").

The sixth Zheng factor holds that, in situations in which the purported joint employee

worked exclusively or predominantly for the putative joint employer, "the joint employer may de

facto become responsible, among other things, for the amount workers are paid and for their

schedules, which are traditional indicia of employment." Zheng, 355 F.3d at 75. "On the other

hand, where a subcontractor performs merely a majority of its work for a single customer, there

is no sound basis on which to infer that the customer has assumed the prerogatives of an

employer." Id.

In applying these tests to determine by whom an employee is employed, the Carter

factors "are sufficient, but not necessary, to establish employer status under the FLSA." Zhao,

2021 WL 1210369, at *4. In general, Carter and Zheng are a "'nonexclusive and overlapping set

of factors' to ensure that the economic realities test is "sufficiently comprehensive and flexible."

Barfield, 537 F.3d at 133. A jury verdict of joint employment has been sustained when as many

as three of the six Zheng factors weighed against joint employment as a matter of law. See

Greenawalt, 642 F. App'x at 40. "Zheng makes clear that not every factor needs to weigh

against joint employment in order for a defendant to be entitled to summary judgment."

Monzano-Moreno, 2021 WL 730663, at *10 (citing Zheng, 355 F.3d at 77 (holding that to reach a conclusion that defendants are entitled to judgment as a matter of law, a court "need not decide that every factor weighs against joint employment") (emphasis in original), R&R adopted, 2021 WL 688295.

### c.  Single Integrated Enterprise Doctrine

Although "[t]he Second Circuit has never endorsed [the single integrated enterprise] theory of liability in the FLSA context, . . . district courts in this Circuit are divided on its application to FLSA and NYLL cases."  Dobrosmylov, 532 F. Supp. 3d at 62 (citing Spiciarich v. Mexican Radio Corp., No. 14 Civ. 9009 (SHS), 2015 WL 4191532, at *5 n.5 (S.D.N.Y. July 10, 2015) (collecting cases)); see Arculeo, 425 F.3d at 198 (discussing single integrated enterprise in the context of Title VII claims).  This Court does not recommend a conclusion that it is or is not a viable theory because as explained below, although Plaintiff relies on it, Plaintiff fails to offer sufficient evidence that could lead a reasonable factfinder to find in Plaintiff's favor on this theory.

"The single employer doctrine provides that, in appropriate circumstances, an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger single-employer entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer."  Griffin v. Sirva Inc., 835 F.3d 283, 292 (2d Cir. 2016) (citation & internal quotations omitted).  To prevail in an employment action against a defendant who is not the plaintiff's direct or joint employer, "the plaintiff must establish that the defendant is part of an 'integrated enterprise' with the employer, thus making one liable for the illegal acts of the other."  Parker v. Columbia Pictures Indus., 204 F.3d 326, 341 (2d Cir. 2000) (internal citations omitted); see

United Union of Roofers, Waterproofers, Allied Workers, Local No. 210, AFL-CIO v. A.W.

Farrell & Son, Inc., No. 07 Civ. 224 (HKS), 2012 WL 4092598, at *16 (W.D.N.Y. Sept. 10,

2022) ("[P]laintiffs have failed to establish by a preponderance of the evidence that [the

defendants] constitute a . . . single integrated enterprise, so as to hold RCS liable for AWF's . . .

obligations[.]"); Bravo v. Established Burger One, LLC, No. 12 Civ. 9044 (CM), 2013 WL

5549495, at *9 (S.D.N.Y. Oct. 8, 2013) (finding that the FLSA plaintiffs alleged that corporate

defendants functioned as a single integrated enterprise to survive a motion to dismiss, while

noting that "obviously, [the p]laintiffs bear the burden of proving this is met down the road").

"The most common example of a single integrated employer is between 'parent and wholly-

owned subsidiary corporations, or separate corporations under common ownership and

management' that operate as a 'single enterprise.'"  Grant v. HER Imports NY, LLC, No. 15 Civ.

5100 (DLI) (LB), 2018 WL 3133454, at *10 (E.D.N.Y. Feb. 16, 2018) (quoting Arcuelo, 425

F.3d at 198), R&R adopted, 2018 WL 1686103 (E.D.N.Y. Mar. 31, 2018).  The "analysis has

been confined to two corporate contexts."  Gulino v. New York State Educ. Dep't, 460 F.3d 361,

378 (2d Cir. 2006).  "[F]irst, where the plaintiff is an employee of a wholly-owned corporate

subsidiary; and second, where the plaintiff's employment is subcontracted by one employer to

another, formally distinct, entity."  Gulino, 460 F.3d at 378; see Wright-Langhammer v. Suhl,

No. 08 Civ. 335 (JLH), 2009 WL 2176584, at *2 (E.D. Ark. July 17, 2009) (finding that the

doctrine applies to hold "multiple corporate entities, not individual persons, . . . liable as a single

employer" where factors are met).  "The doctrine applies in extraordinary circumstances where

[a] plaintiff demonstrates sufficient indicia of an interrelationship between the immediate

corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved

employee that the affiliated corporation is jointly responsible for the acts of the immediate

employer." Benzinger v. Lukoil Pan Americas, LLC, 447 F. Supp. 3d 99, 134 (S.D.N.Y. 2020) (citation & internal quotation omitted).  "In determining whether an integrated enterprise exists, courts consider (1) interrelationship of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Morangelli v. Chemed Corp., 922 F. Supp. 2d 278, 285 (E.D.N.Y. 2013) (quotations & internal citations omitted). "[N]o single factor is required or determinative[.]"  Id. (quoting Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996)).  Courts weighing the interrelated operations factor "consider, among other facts, whether the entities 'share employees, services, records, and equipment'" and whether the entities 'commingle bank accounts, inventories, and lines of credit.'" Dobrosmylov, 532 F. Supp. 3d at 62 (quoting Geraci, 2019 WL 1386318, at *14).  They also consider whether one entity runs another in a "direct, hands-on fashion," such as by establishing the controlled entity's "operating practices and management practices." Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1241 (2d Cir. 1995).

Centralized control of labor relations has been held to be "the most important prong in the single-employer inquiry." Laurin v. Pokoik, No. 02 Civ. 1938 (LMM), 2004 WL 513999, at *6 (S.D.N.Y. Mar. 15, 2004).  The central question is "[w]hat entity made the final decisions regarding employment matters?" Brown v. Daikin Am. Inc., 756 F.3d 219, 227 (2d Cir. 2014); see Cook, 69 F.3d at 1241 (finding centralized control of labor relations where "applications for employment with [the corporate subsidiary] went through [the parent]; all personnel status reports were approved by [the parent]; and [the subsidiary] cleared all major employment decisions with [the parent]").  To show centralized control of labor relations does not require proof that a defendant exercised day-to-day control over a plaintiff, but it must be shown that a defendant's "involvement [was] sufficient and necessary to the total employment process[.]"

28

Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 156-57 (2d Cir. 2014) (citations & quotations omitted).

### d. Successorship Liability

"Federal courts sitting in New York employ either a New York common law standard or a 'substantial continuity' test in determining whether a defendant may be held liable for a previous employer's labor law violations." Moreno v. Ramos, No. 17 Civ. 9439 (LTS) (KNF), 2021 WL 637563, at *3 (S.D.N.Y. Feb. 17, 2021) (quoting Xue Ming Wang v. Abumi Sushi, Inc., 262 F. Supp. 3d 81, 87-89 (S.D.N.Y. 2017)). "Although the Second Circuit has not decided whether the common law test or the substantial continuity test applies to the successor liability in the FLSA context, under either test successor liability focuses on whether a purchaser is liable for claims against the seller's company." De Quan Lu v. Red Koi, Inc., No. 17 Civ. 7291 (VEC), 2020 WL 7711410, at *4 (S.D.N.Y. Dec. 29, 2020) (internal quotations & citations omitted). "Under either test, the party asserting successor liability has the burden of proof." Moreno, 2021 WL 637563, at *4 (citations omitted). This Court does not recommend making a determination as to which standard should be applied because, as described below, Plaintiff fails to offer evidence sufficient to meet either standard.

"Under both New York law and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities." Alvarez v. 40 Mulberry Rest., Inc., No. 11 Civ. 9107 (PAE), 2012 WL 4639154, at *4 (S.D.N.Y. Oct. 3, 2012) (quoting New York v. Nat'l Servs. Indus., Inc., 460 F.3d 201, 209 (2d Cir. 2016)). There are four exceptions to this general rule in which successor liability can attach: "(1) where the successor expressly or impliedly assumed the predecessor's tort liability; (2) where there was a consolidation or merger of seller and purchaser; (3) where the purchasing corporation was a mere

continuation of the selling corporation; or (4) where the transaction is entered into fraudulently to escape . . . obligations." Chen v. L&L New Beginnings LLC, No. 21 Civ. 11225 (VEC), 2022 WL 2306946, at *3 (S.D.N.Y. June 27, 2022) (quoting Battino v. Cornelia Street Fifth Ave., LLC, 861 F. Supp. 2d 392, 401 (S.D.N.Y. 2012)).  "Courts have held that the 'de facto merger' and 'mere continuation' exceptions are 'so similar that they may be considered a single exception." Patino v. Brady Parking, Inc., No. 11 Civ. 3080 (DF), 2017 WL 5198192, at *9 (S.D.N.Y. Oct. 31, 2017) (citing Battino, 861 F. Supp. 2d at 401); see Alvarez, 2012 WL 4639154, at *4 (quoting Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 n.3 (2d Cir. 2003)).  "When analyzing a claim that a successor is a 'mere continuation,' [a c]ourt considers the following factors:  (1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets and general business operation." Alvarez, 2012 WL 463154, at *4 (quoting Nat'l Servs. Indus., 460 F.3d at 209).

A de facto merger "is no different . . . from an ordinary merger, except that there has not been compliance with the statutory requirements for a merger." Bowers v. Andrew Weir Shipping, 27 F.3d 800, 806 (2d Cir. 1994).  New York Business Corporation Law specifically limits mergers to corporations and "other business entities."  N.Y. Bus. Corp. L. § 901(c)(1). The term "other business entities" excludes "a natural person."  Id. § 901(b)(7); see Hamilton Equity Grp., LLC v. Juan E. Irene, PLLC, 957 N.Y.S.2d 527, 530 (4th Dep't 2012) ("Thus, under New York law, neither a professional limited liability company nor a corporation is permitted by statute to merge with a 'natural person,' individual or 'sole proprietorship.'").

30

Other courts have used "[t]he more liberal 'substantial continuity' test" to determine successors' liability in the arena of federal labor and employment law, which "involves consideration of at least three factors: (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; and (3) whether there has been a substantial continuity of business operations." Moreno, 2021 WL 637563, at *3 (quoting Guangcheng Chen v. Matsu Fusion Rest. Inc., No. 19 Civ. 11895 (JMF), 2020 WL 6135764, at *4 (S.D.N.Y. Oct. 16, 2020)). The first two of these factors are the weightiest, but the factors are nonexclusive and courts may consider still others of less weight. See id.; Alvarez, 2012 WL 463154, at *5 ("No one factor is controlling, and it is not necessary that each factor be met to find successor liability."). Still other factors may be considered as relevant. See Patino, 2017 WL 5198192, at *9-10 (listing nine pertinent factors for substantial-continuity test).

### IV. Plaintiff Does Not Offer Sufficient Material Facts From Which A Reasonable Jury Could Find That Rutland Realty Was Plaintiff's Joint Employer

#### a. Formal Control

The Court begins with an assessment of the four "formal control" factors under Carter.

##### i. Whether Rutland Realty Had The Power To Hire And Fire Plaintiff

First, there is no material fact that a reasonable jury could find in Plaintiff's favor to find that Rutland Realty had the power to hire or fire Plaintiff from his employment as a general laborer/grocery clerk at RRMF. Rutland Realty's evidence is that it did not employ, supervise or otherwise use in any way Plaintiff's labor or services. See Sigal Decl. ¶ 3. Rutland Realty's only connection to Plaintiff's alleged employment was that Rutland Realty rented Building One's commercial space to Mr. Duhaney, Ms. Clouden and RRMF. See id. ¶ 4. Plaintiff fails to

rebut this proof.  Throughout his employment, Plaintiff had not heard of or been familiar with Rutland Realty, and Mr. Duhaney and Ms. Clouden were the only two persons who ever gave Plaintiff assignments and told Plaintiff what to do during that employment.  See Def. Exh. F at 37:12-14, 38:20-25, 39:2-21.  A reasonable jury could not conclude from this evidence that it was Rutland Realty that hired Plaintiff to work as a general laborer/grocery clerk at RRMF in 2003.  For the same reasons, a reasonable jury could not find that Rutland Realty hired Plaintiff to perform superintendent/porter duties at Building One in 2003, either.

Plaintiff's argument regarding the first Carter factor instead focuses on whether Rutland Realty had the power to fire Plaintiff.  See ECF No. 131.  Although there is no evidence in the record specifically addressing who, if anyone, fired Plaintiff in 2016,[6] Plaintiff argues that a reasonable jury could find that Rutland Realty had the power to fire Plaintiff from the fact that Rutland Realty did not fire Plaintiff after it bought Building One in 2007.  See Dacas Decl. ¶ 21; ECF No. 131-1 at 5.  The Court disagrees.  Plaintiff does not offer any legal citation or logic supporting the argument that a failure to fire proves either employment or a power to fire by a particular person or entity.  Neither the law nor the facts support Plaintiff's assertion that his alleged continued employment at Building One must have been directly by Building One's owner.

To the contrary, Rutland Realty provided uncontroverted evidence, in the form of Mr. Sigal's declaration, that Rutland Realty rented the commercial space at Building One to Mr. Duhaney, Ms. Clouden and RRMF.  See Sigal Decl. ¶ 3.  This information explains the connection between the real property and Plaintiff's employers without connecting Plaintiff and

---

[6] The Court notes that the motion record does not contain evidence as to how Plaintiff's employment ended in 2016, i.e., whether Plaintiff resigned or was terminated

Rutland Realty, i.e., Rutland Realty as a landlord does not equate to direct power to fire its tenant's employee.

Plaintiff also did not submit evidence that Rutland Realty had the direct power to fire him from his superintendent/porter job at the five buildings, including Building One. See Tapia, 906 F.3d at 61; Zhao, 2021 WL 1210369, at *6; Fernandez, 407 F. Supp. 3d at 452. Plaintiff argues that his performance of some of his superintendent/porter work on the premises of Building One creates a disputed material fact issue as to whether Rutland Realty directly controlled his work there because it was Building One's owner for some period of his employment. Plaintiff does not offer evidence that Rutland Realty did formally control Plaintiff's employment at Building One. In fact, Plaintiff's point about Rutland Realty's failure to fire Plaintiff in 2007 underscores the undisputed evidence that it was Mr. Duhaney and Ms. Clouden, not Rutland Realty, who formally supervised Plaintiff's superintendent/porter work without interruption at all five of the relevant addresses, including Building One. See Def. Exh. F at 38:20-25, 39:2-21; Def. Exh. F at 37:12-14 (Plaintiff testifying that he was not familiar with Rutland Realty). This is consistent with Mr. Sigal's unrebutted sworn declaration that Rutland Realty "did not employ, supervise or otherwise utilize in any way the labor or services of Plaintiff directly, indirectly, in conjunction with, or jointly with any other person or entity." Sigal Decl. ¶ 3.

Accordingly, Rutland Realty has met its burden to show that there is no material fact issue that would permit a jury to resolve the first Carter factor in Plaintiff's favor. Plaintiff's bare assertion that Rutland Realty had such direct power to hire and fire him is insufficient to show that there is a genuine issue of material fact on this question.

### ii.  Whether Rutland Realty Supervised And Controlled Plaintiff's Work Schedule Or Conditions Of Employment

For similar reasons, Plaintiff's evidence fails to demonstrate a genuine issue of material fact regarding the second <u>Carter</u> factor, <u>i.e.</u>, whether Rutland Realty formally supervised and controlled Plaintiff's work schedule and employment conditions between 2003 and 2016.  It is undisputed that Mr. Duhaney and Ms. Clouden alone supervised Plaintiff for the entirety of the employment at issue.  <u>See</u> Def. Exh. F at 39:2-21.  The unrefuted evidence shows that Rutland Realty was the landlord of the commercial space and RRMF its tenant.  <u>See</u> Sigal Decl. ¶¶ 3-4. There is no genuine issue of material fact that Rutland Realty directly supervised and controlled Plaintiff's schedule or conditions of employment at the store.  Plaintiff also fails to submit any evidence that Rutland Realty formally controlled the managerial directions given to Plaintiff by Mr. Duhaney and Ms. Clouden regarding his superintendent/porter duties at the five buildings. <u>See</u> Def. Exh. F at 39:17-24; <u>Zhao</u>, 2021 WL 1210369, at *5.  Given the absence of evidence that Rutland Realty controlled the terms of Plaintiff's employment, there is no genuine issue of material fact that could be found in Plaintiff's favor as to the second <u>Carter</u> factor.

### iii.  Whether Rutland Realty Determined The Rate And Method Of Plaintiff's Payment

As to the third <u>Carter</u> factor, Plaintiff did not offer evidence that would permit a jury to find that Rutland Realty determined the rate and method of Plaintiff's compensation.  It is undisputed that Plaintiff's rate and method of compensation were determined in 2003 when he began his employment as a general laborer/grocery clerk at RRMF and as a superintendent/ porter at all five buildings, then remained unchanged until his employment ended in 2016.  <u>See</u> Dacas Decl. ¶¶ 3, 7, 8-14.  A jury could not reasonably find that this evidence proves that Rutland Realty formally determined or had the power to determine these aspects of Plaintiff's

work from 2007 onward.  See Jean-Louis, 838 F. Supp. 2d at 129-30.  The motion record also does not contain any evidence that it was Rutland Realty that directly paid Plaintiff's weekly $220 cash salary.  See Dacas Decl. ¶ 9.  Without any offer of evidence by Plaintiff as to these issues, there is no disputed material fact that could be found in Plaintiff's favor that could support a conclusion that Rutland Realty determined Plaintiff's pay.  See Vasto, 2017 WL 4877424, at *9; Hugee, 2013 WL 4399226, at *7.

Plaintiff also alleges that he was partially compensated for his work as a general laborer/grocery clerk at RRMF and as superintendent/porter at all five buildings with lodging at Building Three.  This fact is also unable to support a finding that Rutland Realty determined Plaintiff's compensation rate and method for his employment because there is no evidence that Rutland Realty had any ownership or other interest in Building Three.  See Dacas Decl. ¶ 14; Pl. Exh. E at P-0025; see also ECF No. 131-1 at 3.  In fact, the lack of proof that Rutland Realty had an interest in Building Three supports the conclusion that Rutland Realty did not provide free lodging at Building Three as part of Plaintiff's compensation.

Taking the record together, a jury could not credit Plaintiff's unsupported position that Rutland Realty determined the rate and method of his payment.  The third Carter factor cannot support a finding that Rutland Realty was Plaintiff's joint employer.

#### iv.  Whether Rutland Realty Maintained Employment Records

Plaintiff states that he never received records pertaining to his wages and hours worked from any individual or entity, and he did not present evidence that any were maintained.  See Def. Exh. D ¶ 3; Def. Exh. E ¶ 3; Dacas Decl. ¶¶ 16-18; ECF No. 70 ¶¶ 79-80.  Plaintiff did not produce any indirect records located during discovery, such as a ledger or bank cash withdrawals, to prove circumstantially that Plaintiff was Rutland Realty's employee.  As a result,

there is no evidence to raise a genuine issue of material fact which a jury could resolve in Plaintiff's favor to find that Rutland Realty's maintenance of records shows its formal control over Plaintiff's employment.

### v. Conclusion

In summary, there is no genuine issue of material fact regarding any of the four Carter factors which a reasonable jury could resolve in Plaintiff's favor to conclude that Rutland Realty formally controlled Plaintiff's employment at the relevant times.  See Zhao, 2021 WL 1210369, at *5 (finding that the plaintiffs failed to identify disputed facts to show that one defendant exercised formal control over them under the Carter factors where undisputed evidence in the record showed that "[another defendant] was responsible for hiring and firing employees, setting their schedules, and overseeing their pay").

### b. Functional Control

Given that the functional control test is most relevant in the context of subcontractor relationships, Plaintiff's failure to present evidence that Rutland Realty contracted with Mr. Duhaney and Ms. Clouden for Plaintiff's services is a factual omission that arguably renders Zheng inapplicable.  See Suarez v. Murray, No. 20 Civ. 3514 (JCM), 2021 WL 1240518, at *6 (S.D.N.Y. Apr. 2, 2021) ("The Second Circuit has clarified that the Zheng factors are most relevant in the context of subcontractor relationships, while the Carter factors bear directly on whether workers who are already employed by a primary employer are also employed by a second employer.") (citations & quotations omitted); Granda v. Trujillo, Sailbridge Capital, LLC, No. 18 Civ. 3949 (PAE), 2019 WL 367983, at *7 (S.D.N.Y. Jan. 30, 2019) (declining to analyze the Zheng factors "[b]ecause the functional test set out in Zheng focuses on distinguishing between subcontractors and employees, a context not at issue" in the dispute

before the court); <u>Gil</u>, 2017 WL 1178027, at *5.  Although the Court could also decline to apply the six "functional control" factors under <u>Zheng</u> because the parties have not briefed them but only mentioned them in passing, the Court will address them in the interest of completeness.[7] See <u>Zhao</u>, 2021 WL 1210369, at *4 ("[The <u>Carter</u>] factors are sufficient, but not necessary, to establish employer status under the FLSA.").

### i. Whether Rutland Realty's Premises And Equipment Were Used For Plaintiff's Work

A reasonable jury could find that <u>Zheng</u>'s first factor, use of premises, weighs in favor of a finding that Rutland Realty exercised functional control over Plaintiff's employment.  It is undisputed that Rutland Realty owned Building One between 2007 and 2016, during which time Mr. Duhaney and Ms. Clouden allegedly directed Plaintiff's general laborer/grocery clerk duties at RRMF on the premises and his superintendent/porter duties in connection with the communal/hostel-style apartments on the Building One premises.  Although shared premises are not a perfect proxy for joint employment and could be consistent with a legitimate landlord-tenant relationship in the case of Plaintiff's general laborer/grocery clerk work at RRMF or a legitimate subcontracting relationship in the case of Plaintiff's superintendent/porter work, a factfinder could use shared premises as a starting point to uncover employment of Plaintiff by Rutland Realty.  See <u>Zheng</u>, 355 F.3d at 72.

Yet, the Court must note that Plaintiff did not offer other evidence to support his extrapolations that Rutland Realty's ownership of Building One shows that all or even most of Plaintiff's work giving rise to his wage-and-hour allegations was performed on a shared

---

[7] Plaintiff's opposition brief does not set forth or discuss the <u>Zheng</u> factors other than to make passing reference to the existence of a functional control test.  <u>See, e.g.</u>, ECF No. 131-1.

premises.  First, the undisputed evidence is that Mr. Duhaney and Ms. Clouden rented

commercial space from Rutland Realty when it owned Building One for Mr. Duhaney and Ms.

Clouden's operation of RRMF where they directed Plaintiff's work as a general laborer/grocery

clerk.  From this evidence a reasonable jury could not find that Plaintiff's general laborer/grocery

clerk work for RRMF was on premises controlled by Rutland Realty.  Second, setting aside that

Plaintiff's record does not show what portion of his overall work was devoted to his

superintendent/porter duties at Building One, Plaintiff's allegations and evidence indisputably

show that he performed this category of work at Mr. Duhaney and Ms. Clouden's direction, not

just at Building One, but at all five buildings.  Cf. Copper v. Cavalry Staffing, LLC, 132 F. Supp.

3d 460, 464 (E.D.N.Y. 2015) (finding that the plaintiff adequately pleaded the first Zheng factor

by alleging that all of the work they performed was done "exclusively on [the putative joint

employer's] premises").  Given that it is Plaintiff's evidence that he worked at four other

buildings that Rutland Realty indisputably did not own, it cannot be concluded that Rutland

Realty's Building One premises was necessary for all of Plaintiff's work.

In summary, the Court finds that a reasonable jury could, to a greater or lesser degree,

resolve the shared-premises Zheng factor in Plaintiff's favor.

### ii. Whether Rutland Realty Had A Business That Shifted From One Putative Joint Employer To Another

The second Zheng factor asks whether Plaintiff was "part of a business organization that

shifts as a unit from one putative joint employer to another[.]"  Zheng, 355 F.3d at 72.  Plaintiff

did not offer evidence that Rutland Realty was Mr. Duhaney and Ms. Clouden's client at all, but

rather he argued that Rutland Realty controlled him.  See ECF No. 131.  This argument is

contradicted by Plaintiff's own evidence.  Plaintiff's record is that Mr. Duhaney and Ms.

38

Clouden regularly shifted Plaintiff's work responsibilities among the store and the five different real properties of which Rutland Realty owned only Building One, and for only a subset of the total years at issue. Even assuming arguendo that Rutland Realty were Mr. Duhaney's and Ms. Clouden's client, Building One is only one of five buildings where Plaintiff performed his superintendent/porter duties at Mr. Duhaney's and Ms. Clouden's alleged direction. The record does not include evidence sufficient to support a finding that Rutland Realty had connections to the other four premises such that a reasonable jury could find that Mr. Duhaney and Ms. Clouden were a single-client employer that depended entirely on Rutland Realty. In addition, Plaintiff's evidence is that he worked at a store doing work unrelated to property maintenance, such that the store work and porter work imply a shift between effectively two clients, one of which is unrelated to Rutland Realty's business. See Dacas Decl. ¶¶ 3-7.

### iii. Whether Plaintiff Performed A Discrete Line-Job That Was Integral To Rutland Realty's Process Of Production

Plaintiff did not offer evidence of a material fact that would permit a reasonable jury to find that the third Zheng factor—whether Plaintiff performed a discrete line-job that was integral to Rutland Realty's process of production—supports the conclusion that Rutland Realty was Plaintiff's joint employer. Assuming that the factor applies, its evidentiary value is diminished by the fact that Rutland Realty did not manufacture a product and Plaintiff's superintendent/ porter work at Building One was thus as a "a service provider and [he] did not perform a discrete line job." Hugee, 2013 WL 4399226, at *9. As noted above, Plaintiff's work at the store was unrelated to Rutland Realty's business as a real-property owner. Plaintiff did not show that Rutland Realty had any business interest in food or product sales. Plaintiff's own evidence is thus that he did not perform a discrete line job, so this Zheng factor cannot weigh in his favor.

### iv.   Whether Responsibility Under Rutland Realty's Alleged Contract With Mr. Duhaney And Ms. Clouden Could Pass From One Subcontractor To Another Without Material Changes

Plaintiff did not offer evidence of any material fact regarding the fourth Zheng factor that could favor Plaintiff.  Assuming that Rutland Realty subcontracted with Mr. Duhaney and Ms. Clouden for Plaintiff's superintendent/porter work at Building One from 2007 through 2016, a reasonable jury could not find from this record that Plaintiff would have continued to do the same work in the same place regardless of whether Mr. Duhaney and Ms. Clouden had responsibility for the contract. See Greenawalt, 642 F. App'x at 39.  Given that, according to Plaintiff, Mr. Duhaney and Ms. Clouden directed Plaintiff's employment from 2003 through 2016 at five different real properties, the evidence only shows that Plaintiff worked at Building One only to the extent that Mr. Duhaney and Ms. Clouden were responsible for work at Building One.  In other words, because there is no evidence that Plaintiff's employment at Building One would not have ended if Mr. Duhaney and Ms. Clouden "severed [their alleged] relationship with [Rutland Realty]," Monzano-Moreno, 2021 WL 730663, at *16, R&R adopted, 2021 WL 688295, "this factor does not in any way support the determination that a joint employment relationship exists," Zheng, 355 F.3d at 74.

### v.   Whether And To What Extent Rutland Realty Supervised Plaintiff's Work

"The inquiry under [the fifth Zheng] factor is largely the same as the inquiry under the second formal control factor and is the most relevant factor in determining whether a purported joint employer exercises functional control over plaintiffs."  Fernandez, 407 F. Supp. 3d at 459 (citing Martin, 273 F. Supp. 3d at 433).  As reviewed above in connection with the second formal control factor, see Section IV.a.ii, supra, there is no evidence that Rutland Realty played

any role in supervising Plaintiff.  Thus, a reasonable jury could not find that this functional control factor favors Plaintiff.

### vi.   Whether Plaintiff Worked Exclusively Or Predominantly For Rutland Realty

The sixth Zheng factor asks whether Plaintiff worked exclusively or predominantly for Rutland Realty.  Here, Plaintiff did not offer evidence sufficient to support the conclusion that he had a full-time job working for Rutland Realty.  As discussed above in Sections IV.a-b, supra, the fact that Rutland Realty rented commercial space at Building One to Mr. Duhaney, Ms. Clouden and/or RRMF "do[es] not suggest the lack of an arm's length relationship between the two entities." Dobrosmylov, 532 F. Supp. 3d at 62 (quoting Geraci, 2019 WL 1386318, at *14).  Plaintiff did not offer any evidence that Rutland Realty had any interest in the shop.  Plaintiff's evidence shows that he worked at five different real properties, of which only Building One was owned by Rutland Realty.  Dacas Decl. ¶ 7; Pl. Exh. B.  Plaintiff did not present evidence of how his time was divided among the store and the five real properties.  In the absence of any information showing that he worked for Rutland Realty full time or predominantly, a reasonable jury could not find that Plaintiff has shown exclusive or predominant employment for Rutland Realty.

### vii.   Conclusion

In summary, a reasonable jury could at most find that the shared-premises factor points, to a greater or lesser degree, toward Rutland Realty having functional control over Plaintiff only with respect to Plaintiff's superintendent/porter work at Building One.  Although a jury verdict of joint employment has been sustained when as many as three Zheng factors weighed against joint employment as a matter of law, it is not possible that a reasonable jury could find, under the

41

facts of this case, that Rutland Realty functionally controlled Plaintiff such that it was his joint

employer, given that none of the other Zheng factors could be reasonably found to favor

Plaintiff.  See Greenawalt, 642 F. App'x at 40.  Even if a jury were to resolve the shared-

premises factor in Plaintiff's favor to the extent described, it could not reasonably conclude from

such a limited demonstration of functional control that Rutland Realty jointly employed Plaintiff

for the purposes of Plaintiff's alleged wage-and-hour violations.

> **V.   There Is No Genuine Issue Of Material Fact From Which A Reasonable Jury Could Find That EPP Was Plaintiff's Joint Employer**

> > **a.   Formal Control**

The Court's application of the Carter factors to Plaintiff's argument that EPP exercised

formal control over Plaintiff's employment is in many respects similar to its analysis with respect

to Rutland Realty.  See Section IV.a, supra.  Although the Court's EPP-specific analysis set forth

below may therefore at times be repetitive, it is necessary in order to take into account certain

evidence specific to EPP.

> > > **i.   Whether EPP Had The Power To Hire And Fire Plaintiff**

For substantially the same reasons discussed above in the context of Rutland Realty, see

Section IV.a.i, supra, there is no material fact issue regarding whether EPP had the power to fire

Plaintiff from the fact that EPP did not fire Plaintiff in 2015 when nonparty Y&S, which used

EPP as a managing agent, bought Building Two.  See Pl. Exh. A (memorializing nonparty

Y&S's 2015 purchase of Building Two); Pl. Exh. E (reflecting EPP's status as Building Two's

managing agent); Monzano-Moreno, 2021 WL 730663, at *10, R&R adopted, 2021 WL 688295.

EPP's evidence in the form of Mr. Engel's declaration is that EPP "did not employ, supervise or

otherwise utilize in any way the labor or services of Plaintiff directly, indirectly, in conjunction

with, or jointly with any other person or entity." Engel Decl. ¶ 3. Although the Court previously stated that Plaintiff could use discovery to test such a declaration from EPP's principal disclaiming that EPP employed Plaintiff, see ECF No. 67 at 9-10, R&R adopted, ECF No. 69, Plaintiff testified at his deposition that he had never heard of EPP, see Def. Exh. F at 38:6-8, and the record does not contain any evidence sufficient to refute the declaration from Mr. Engel. Rather, Mr. Engel's declaration is consistent with Plaintiff's other evidence that Plaintiff began working for Mr. Duhaney and Ms. Clouden at all five buildings, including Building Two, in 2003, and that Mr. Duhaney and Ms. Clouden were the only two persons who ever gave Plaintiff assignments and told Plaintiff what to do. See Dacas Decl. ¶¶ 3, 7 (Plaintiff stating that he began working as a superintendent/porter at Building Two and the four other properties in 2003); Def. Exh. F at 37:12-14, 38:20-25, 39:2-21.

At most, Plaintiff appears to argue that the 2017 HPD Registration Summary Report may have useful content because it shows that Ms. Clouden worked as an "officer" for an unidentified organization at Building Two in 2016 when EPP was also the listed managing agent for the address. See ECF No. 131-1 at 3. Yet, the document itself has a field in which HPD would have listed EPP as the organization for which Ms. Clouden served as an officer if that had been reported, but the field is blank, see Pl. Exh. E. Plaintiff had the opportunity to address this evidentiary gap as to Ms. Clouden's role with EPP, if any, when taking nonparty Mr. Sigal's deposition, but he did not elicit testimony or other evidence that could conceivably connect Ms. Clouden with EPP at Building Two during the relevant period. Instead, Plaintiff only submitted testimony from Mr. Sigal stating that he worked for EPP for a span of years that included 2016 and that Mr. Sigal would "constantly" see Ms. Clouden in the neighborhood. See Pl. Exh. F at 48:1-16. This testimony is not enough to permit a reasonable jury to conclude that Ms. Clouden,

much less Mr. Duhaney (as to whom similar evidence is lacking), was engaged as EPP's agent at Building Two.  The mere fact that a corporation's employee regularly sees an individual in a particular neighborhood cannot establish that that individual is the corporation's agent or employee.

The record thus does not present a genuine issue of material fact as to whether EPP had the power to hire or fire Plaintiff; this Carter factor cannot support a finding that EPP jointly employed Plaintiff.  See Tapia, 906 F.3d at 61; Zhao, 2021 WL 1210369, at *6; Fernandez, 407 F. Supp. 3d at 452.

### ii.  Whether EPP Supervised And Controlled Plaintiff's Work Schedule Or Conditions Of Employment

Regarding the second Carter factor, it is undisputed on this motion that Mr. Duhaney and Ms. Clouden supervised and controlled Plaintiff's work schedule and employment conditions between 2003 and 2016, i.e., the entirety of Plaintiff's employment at issue.  See Def. Exh. F at 39:2-21.  There is no evidence that EPP supervised and controlled Plaintiff's schedule or work conditions at Building Two or any of the other four buildings, or that it provided input into the managerial decisions made by Mr. Duhaney and Ms. Clouden.  There is no evidence connecting EPP to the store where Plaintiff worked.  As a result, there is no genuine issue of material fact that would allow a reasonable jury to find that EPP supervised and controlled Plaintiff's work schedule and employment conditions directly or by using Mr. Duhaney and Ms. Clouden as its agents.  See Def. Exh. F at 39:17-24; Zhao, 2021 WL 1210369, at *5; see also Tapia, 906 F.3d at 62; Monzano-Moreno, 2021 WL 730663, at *11-12, R&R adopted, 2021 WL 688295.

### iii.  Whether EPP Determined The Rate And Method Of Plaintiff's Payment

There is no genuine issue of material fact that could be resolved in Plaintiff's favor such

44

that the third <u>Carter</u> factor could support a finding that EPP jointly employed Plaintiff.  The

evidence is that Plaintiff's rate and method of compensation for his work at all five buildings

were determined in 2003, then remained unchanged until his employment ended in 2016.  <u>See</u>

Dacas Decl. ¶¶ 3, 7, 8-14.  There is no evidence that EPP directly paid Plaintiff's $220 weekly

cash salary or provided him with free lodging at Building Three, which Plaintiff says Ms.

Clouden controlled and as to which Plaintiff did not show any connection to EPP.  <u>See id.</u> ¶ 14;

Pl. Exh. E at P-0025; <u>see also</u> ECF No. 131-1 at 3.  A jury could not reasonably find from this

evidence that EPP set Plaintiff's compensation rate and method for the work he indisputably

performed at Mr. Duhaney and Ms. Clouden's direction at the five different locations.  <u>See</u>

<u>Vasto</u>, 2017 WL 4877424, at *9; <u>Hugee</u>, 2013 WL 4399226, at *7.

### iv.  Whether EPP Maintained Employment Records

A reasonable jury could not find that EPP maintained employment records for

substantially the same reasons stated in the Court's analysis of that <u>Carter</u> factor in its discussion

of Rutland Realty.  <u>See</u> Section IV.a.iv, <u>supra</u>.  Plaintiff never received records of his wages and

hours, and he did not present any evidence that any were maintained.  <u>See</u> Def. Exh. D ¶ 3; Def.

Exh. E ¶ 3; Dacas Decl. ¶¶ 16-18; ECF No. 70 ¶¶ 79-80.  Plaintiff also did not offer any indirect

records of his employment from discovery from EPP such as a pay ledger, bank records or

records of communication between Plaintiff and EPP.  As a result, a jury could not conclude that

EPP maintained employment records for Plaintiff such that this <u>Carter</u> factor supports a

conclusion that EPP was Plaintiff's joint employer.  <u>See</u> <u>Shiflett</u>, 601 F. App'x at 31.

### v.  Conclusion

In summary, there is no genuine issue of material fact regarding any of the four <u>Carter</u>

factors which a reasonable jury could resolve in Plaintiff's favor to conclude that EPP formally

controlled Plaintiff's employment at the relevant times.  See Zhao, 2021 WL 1210369, at *5 (finding that the plaintiffs failed to identify disputed facts to show that one defendant exercised formal control over them under the Carter factors where undisputed evidence in the record showed that "[another defendant] was responsible for hiring and firing employees, setting their schedules, and overseeing their pay").

### b. Functional Control

The Court next addresses the Zheng functional control factors as they pertain to EPP. Although the question has not been briefed, the Court does this for completeness and despite Plaintiff's failure to present direct evidence that EPP contracted with Plaintiff or with Mr. Duhaney and Ms. Clouden for Plaintiff's services.  See Suarez, 2021 WL 1240518, at *6; see also ECF Nos. 130-132.

### i. Whether EPP's Premises And Equipment Were Used For Plaintiff's Work

 A reasonable jury could not find that Zheng's first factor, use of premises, weighs in favor of finding that EPP exercised functional control over Plaintiff's employment.  EPP did not own Building Two at any relevant time.  The evidence is that nonparty Y&S bought Building Two in 2015 and that EPP thereafter served as nonparty Y&S's managing agent there.  It is undisputed that EPP served as a managing agent at roughly nine to ten properties in Brooklyn at the time of which Building Two was only one, and that Building Two was not EPP's business address.  See Pl. Exh. F at 51:4-25 (Mr. Sigal testifying that EPP was a managing agent for nine or ten properties); Pl. Exh. E at P-0024 (stating EPP's address as 5412 16th Avenue, Brooklyn, New York 11212, not Building Two).  Plaintiff has not shown a genuine issue of material fact as to whether Plaintiff used an EPP premises for Plaintiff's superintendent/porter work.  See

Dobrosmylov, 532 F. Supp. 3d at 62 (quoting Geraci, 2019 WL 1386318, at *14); Hernandez, 2020 WL 1083706, at *12; Hugee, 2013 WL 4399226, at *8 (finding that the plaintiff failed to satisfy the first Zheng factor where he failed to allege that he worked on a contractor's premises). There is no evidence that EPP was the managing agent for any of the other buildings at issue in this case or was involved with the store.

The Court also notes that Plaintiff's allegations and evidence indisputably show that he performed the superintendent/porter duties at Mr. Duhaney and Ms. Clouden's alleged direction not just at Building Two, but at all five buildings.  In other words, even if Plaintiff had shown a fact issue regarding whether Building Two was EPP's premises for the purposes of analyzing this factor, a reasonable jury could not conclude that Plaintiff's superintendent/porter work would have been impossible for Plaintiff to do if he were not regularly on Building Two's premises because Plaintiff alleges that he worked in that regard at the four other buildings and at the store, as to all of which there is no evidence of a connection to EPP.  Cf. Fernandez, 407 F. Supp. 3d at 456 ("Indeed, it would [have been] impossible for [the plaintiffs] to do their job if they were not regularly at [the allegedly shared] premises.").

As a result, a reasonable jury could not resolve the shared-premises factor in a manner that would support a finding that EPP jointly employed Plaintiff.

### ii. Whether EPP Had A Business That Shifted From One Putative Joint Employer To Another

There is no genuine issue of material fact with respect to the second Zheng factor which could support a reasonable jury's finding that EPP jointly employed Plaintiff.  There is no evidence that EPP was Mr. Duhaney and Ms. Clouden's client with respect to Plaintiff's work at Building Two or that they were EPP's client.  Even if there were, it is undisputed that Building

Two was one of five buildings at which Plaintiff performed superintendent/porter duties at Mr. Duhaney and Ms. Clouden's alleged direction and that he worked at the store entirely at Building One. Cf. Barfield, 537 F.3d at 147 (finding that the plaintiff satisfied the second Zheng factor as a matter of law with evidence that she worked only on the premises of the defendant hospital and no other). The record thus could not sustain a finding that Mr. Duhaney and Ms. Clouden depended entirely on EPP as an alleged client, let alone their sole client, because Plaintiff's testimony is that he was part of a business organization that shifted as a unit from one putative joint employer to another. See Zheng, 355 F.3d at 72. Even if EPP were Mr. Duhaney and Ms. Clouden's client, there is no evidence that EPP performed work at all of the locations and the shop with which Mr. Duhaney and Ms. Clouden were associated. Plaintiff's record is that Mr. Duhaney and Ms. Clouden regularly shifted Plaintiff's work responsibilities among the five different properties of which EPP served as nonparty Y&S's managing agent at only Building Two for only a subset of the total years at issue and had Plaintiff work at a separate retail business. "This is not a situation . . . where [Plaintiff] existed only to serve [EPP]." Fernandez, 407 F. Supp. 3d at 457 (citation & quotation omitted); see Hugee, 2013 WL 4399226, at *8. Under such circumstances, this Zheng factor could only weigh against joint employment. See Fernandez, 407 F. Supp. 3d at 457.

### iii. Whether Plaintiff Performed A Discrete Line-Job That Was Integral To EPP's Process Of Production

There is no genuine issue of material fact that could favor Plaintiff that would permit a reasonable jury to find that Plaintiff performed a discrete line-job that was integral to EPP's process of production such that the third Zheng factor could support a conclusion that EPP jointly employed Plaintiff. Assuming that the factor applies, EPP did not manufacture a product

48

and Plaintiff's superintendent/porter duties were as a service provider and not a discrete line job. See Hugee, 2013 WL 4399226, at *9.  Plaintiff's work at the store did not involve production, either, and there is no evidence connecting EPP to the store's operations.

### iv.  Whether Responsibility Under EPP's Alleged Contract With Mr. Duhaney And Ms. Clouden Could Pass From One Subcontractor To Another Without Material Changes

There is no material issue of fact regarding the fourth Zheng factor—whether responsibility under a contract could pass from one subcontractor to another without material changes—that could favor Plaintiff's unsupported theory that EPP was his joint employer.  A reasonable jury could not find that Plaintiff would have continued to do the same work at Building Two regardless of whether Mr. Duhaney and Ms. Clouden kept the alleged contract. See Greenawalt, 642 F. App'x at 39.  Given that Plaintiff worked at Mr. Duhaney and Ms. Clouden's direction at the store and five properties between 2003 and 2016, a jury could only reasonably conclude on this record that Plaintiff worked at Building Two only to the extent that Mr. Duhaney and Ms. Clouden had operations there.  In other words, because Plaintiff's duties at Building Two would have ended if Mr. Duhaney and Ms. Clouden "severed [their alleged] relationship with [EPP]," Monzano-Moreno, 2021 WL 730663, at *16, R&R adopted, 2021 WL 688295, "this factor does not in any way support the determination that a joint employment relationship exists," Zheng, 355 F.3d at 74.

### v.  Whether And To What Extent EPP Supervised Plaintiff's Work

"The inquiry under [the fifth Zheng] factor is largely the same as the inquiry under the second formal control factor and is the most relevant factor in determining whether a purported joint employer exercises functional control over plaintiffs."  Fernandez, 407 F. Supp. 3d at 459 (citation omitted).  As reviewed above in connection with the second formal control factor, see

Section V.a.ii, <u>supra</u>, there is no evidence that EPP played any role in supervising Plaintiff. Thus, a reasonable jury could not find that this functional control factor favors Plaintiff.

### vi.  Whether Plaintiff Worked Exclusively Or Predominantly For EPP

The sixth Zheng factor asks whether Plaintiff worked exclusively or predominantly for EPP.  Plaintiff did not offer evidence sufficient to support the conclusion that he had a full-time job working for EPP.  It is undisputed that Building Two was only one of five properties where Plaintiff performed work at Mr. Duhaney and Ms. Clouden's alleged direction and that they also directed his work at the store.  See Dacas Decl. ¶¶ 7, 20; Def. Exh. F at 37:4-39:24. Plaintiff did not present evidence that EPP contracted with Mr. Duhaney and Ms. Clouden for Plaintiff's services at Building Two, evidence regarding how Plaintiff's time was divided between the five properties and the store, or evidence that EPP has any connection to the other four buildings.  In the absence of any such information, a reasonable jury could not find that Plaintiff showed exclusive or predominant employment at Building Two.

### vii.  Conclusion

In summary, a reasonable jury could not find that any of the Zheng factors weigh in favor of finding EPP to be Plaintiff's joint employer.  A reasonable jury therefore could not conclude that EPP functionally controlled Plaintiff's employment as described at all five real properties and the store such that it was Plaintiff's joint employer and liable for Plaintiff's alleged wage-and-hour violations.

### VI.  There Is No Genuine Issue Of Material Fact From Which A Reasonable Jury Could Find That Rutland Realty Or EPP Are Liable For Plaintiff's Alleged Wage-And-Hour Violations Under A Single Integrated Enterprise Theory

As a preliminary matter, the Court notes that Plaintiff's briefing is less than clear that he intends to raise the single integrated enterprise doctrine to argue Rutland Realty and EPP's

liability.  Although Plaintiff makes passing reference to the relevant factors in his discussion of joint employment, see ECF No. 131-1 § II, as discussed in Sections III.b-c, supra, the doctrines of single integrated employer and joint employer are separate theories of liability, a point which Plaintiff does not develop in any detail.  Assuming that Plaintiff meant to invoke the single integrated enterprise test as a separate basis for liability and assuming that it applies in the FLSA context between corporate and individual defendants, a legal issue the Court does not decide here, Plaintiff has not shown the "extraordinary circumstances" that would permit a jury to find Rutland Realty and EPP liable thereunder.  See Dobrosmylov, 532 F. Supp. 3d at 62.

In Plaintiff's discussion of the common-management factor—which is the only aspect of the test that Plaintiff mentions apart from generally listing its four factors—he argues that Rutland Realty and EPP had common management because Mr. Sigal worked at EPP in 2016 and bought Rutland Realty in 2017.  See ECF No. 131-1 § II.  Assuming arguendo that a reasonable jury could find that this shows Rutland Realty's and EPP's common management between one another, the test asks whether Rutland Realty or EPP were a single integrated enterprise with Plaintiff's ostensible direct employers, Mr. Duhaney and Ms. Clouden.  See Davis v. Abington Mem'l Hosp., 817 F. Supp. 2d 556, 565 (E.D. Pa. 2011).

Although Plaintiff does not brief the other single integrated enterprise factors, the Court will address them for completeness.

A reasonable jury could not find that Mr. Duhaney and Ms. Clouden's alleged operations at five different real properties in two different lines of work were interrelated with those of Rutland Realty or EPP or both.  Plaintiff's evidence is only that Mr. Duhaney and Ms. Clouden allegedly employed him at five properties which included Building One and Building Two; that Rutland Realty bought Building One in 2007; and that EPP served as managing agent to the

nonparty purchaser of Building Two starting in 2015.  Without evidence that Mr. Duhaney and

Ms. Clouden shared records and equipment, commingled bank accounts, inventories, and lines of

credit with Rutland Realty and/or EPP, a reasonable jury could not find they had interrelated

operations.  See Dobrosmylov, 532 F. Supp. 3d at 62 (quoting Geraci, 2019 WL 1386318, at

*14).

   Next, a reasonable jury could not find that Plaintiff's record shows that Mr. Duhaney and

Ms. Clouden had centralized labor relations with Rutland Realty and EPP.  It is undisputed that

Mr. Duhaney and Ms. Clouden were the only persons that directed Plaintiff's employment at all

five properties for many years prior to the changes in ownership at Building One and Building

Two, see Def. Exh. F at 36:2-21, and there is no evidence that Rutland Realty or EPP performed

activities for Mr. Duhaney and Ms. Clouden that have been held to demonstrate centralized labor

relations, for example, activities akin to "handling job applications, approving personnel status

reports, [or] exercising veto power over major employment decisions."  Parker, 204 F.3d at 341.

In fact, it is undisputed that there is no direct evidence of Rutland Realty or EPP performing any

labor relations activities at all.  See id.  A reasonable jury thus could not find that Rutland Realty

or EPP's involvement was "sufficient and necessary to [Plaintiff's] total employment process."

Turley, 774 F.3d at 156-57; see Morangelli, 922 F. Supp. 2d at 286 (holding that two entities

were not a single integrated enterprise where one did not control the plaintiffs' work schedules

and employment conditions).  Plaintiff's reliance upon the changes in ownership at Building One

and Building Two could not sustain a jury finding that Mr. Duhaney and Ms. Clouden lacked an

arm's length relationship with Rutland Realty at Building One or EPP at Building Two.  See

Dobrosmylov, 532 F. Supp. 3d at 62 (quoting Geraci, 2019 WL 1386318, at *14); Morangelli,

922 F. Supp. 2d at 286 (granting summary judgment motion for defendants, holding that

evidence including the defendants' offices in the same building as plaintiffs' employer "amount[ed] to nothing more than a 'scintilla of evidence' in support of [the plaintiffs'] claim").

A jury could not find common ownership and financial control of Mr. Duhaney and Ms. Clouden's operations with those of Rutland Realty or EPP, either.  First, Plaintiff did not present evidence to contradict Rutland Realty's proof that it rented the commercial space at Building One to Mr. Duhaney and Ms. Clouden for RRMF's operations.  See Geraci, 2019 WL 1386318, at *16 (finding the factor unmet where the parties did not dispute that the two defendants had separate ownership, and in the absence of any proof that the alleged parent entity exercised any financial control over the subsidiary).  As such, a jury could not find that Rutland Realty commonly owned or financially controlled RRMF.  Further, there is no evidence that the five real properties where Plaintiff allegedly worked as a superintendent/porter were commonly owned or financially controlled.

In summary, the evidence presented by Plaintiff could not support a finding of "extraordinary circumstances" so as to justify application of the single-employer doctrine.  Benzinger, 447 F. Supp. 3d at 134; Bravo, 2013 WL 5549495, at *8 ("[D]espite alleging an 'integrated enterprise,' [p]laintiffs cannot escape their obligation under the FLSA to allege a relationship of control between the [d]efendants and themselves.").

### VII.    Rutland Realty Cannot Be Liable For Time-Barred FLSA And NYLL Claims Under A Successor-Liability Theory

Plaintiff also argues that Rutland Realty's motion for summary judgment should be denied because Rutland Realty is liable under successor-liability principles for any wage-and-hour violations Plaintiff suffered between 2003 and 2007 (prior to Rutland Realty's 2007 purchase of Building One).  See ECF No. 131-1 § III (arguing Rutland Realty is liable "for the

period 2003-2007"); id. n.5 (arguing that Rutland Realty's direct liability as Plaintiff's joint employer is for the period 2007 through 2016, while its successor liability is for the period 2003 through 2007).[8]  This Court disagrees.

Courts apply two different tests to determine if successor liability exists in the FLSA context—the traditional test and the substantial-continuity test; successor liability may be satisfied by either test.  See Chen, 406 F. Supp. 3d at 223.  As discussed supra, Section III.b.ii.d, the traditional test states that a successor may be liable for a predecessor's liabilities if:

> (1) a successor expressly or impliedly assumed the predecessor's liabilities; (2) there was a consolidation or 'de facto merger' of predecessor and successor; (3) the successor corporation was a mere continuation of its predecessor; or (4) the transaction between successor and predecessor was entered into fraudulently to escape obligations.

Id.  Plaintiff does not argue that Rutland Realty expressly or impliedly assumed a predecessor's liabilities.  See ECF No. 131-1 at 13-14.  Plaintiff also does not argue that the transaction between an alleged successor and predecessor was a product of fraud.  See id.  Plaintiff's only argument is that, because he continued to perform his same duties at the property regardless of its ownership, and because Plaintiff continued to interact with Mr. Duhaney and Ms. Clouden throughout the performance of his duties, "the defendants acted as if there were a de facto merger of the Duhaneys (who [Plaintiff] reported to) . . . and the successor entity at the property, [Rutland Realty]."  See id.  This argument is not tenable; New York law excludes natural persons from the list of "other business entities" with which a corporation may merge.  N.Y. Bus. Corp. L. §§ 901(b)(7), (c)(1); see Hamilton Equity Grp., 957 N.Y.S.2d at 530 ("Thus, under New York law, neither a professional limited liability company nor a corporation is permitted by statute to

---

[8] Plaintiff does not make his successor-liability argument as to EPP.  See ECF No. 131-1.

merge with a 'natural person,' individual or 'sole proprietorship.'").

Plaintiff did not present evidence to satisfy the substantial-continuity test.  Assuming arguendo that Rutland Realty's purchase of Building One somehow operated as a purchase of Mr. Duhaney and Ms. Clouden's business assets, the first two factors—deemed "critical"—weigh against a finding of substantial continuity.  As to the first factor, Plaintiff did not file this lawsuit until ten years after Rutland Realty purchased Building One.  It therefore cannot be said that Rutland Realty had notice of Plaintiff's wage-and-hour claims prior to acquiring Building One.  As to the second factor, Plaintiff did not allege that Mr. Duhaney and Ms. Clouden were unable to provide relief.  The fact that these two Defendants have not responded to the amended complaint is insufficient.  See Feng Chen v. Patel, No. 16 Civ. 1130 (AT) (SDA), 2019 WL 2763836, at *5 (S.D.N.Y. July 2, 2019) (finding mere fact of defendants' default does not satisfy second factor of "substantial continuity" test); Moreno, 2021 WL 637563, at *4 n.6 (same).  It is clear that Mr. Duhaney and Ms. Clouden, and RRMF, continued to exist after the purchase of Building One, and Mr. Duhaney and Ms. Clouden continued to be the only people from whom Plaintiff ever received work assignments; this weighs against the imposition of successor liability on Rutland Realty.  Although Plaintiff is correct that the fact he performed the same jobs at the same premises and reported to the same people, both before and after the sale of Building One, demonstrates "continuity,"—in the plain meaning of that word—the continuity is with Mr. Duhaney and Ms. Clouden, not Rutland Realty.[9]

---

[9] The Court notes that there are likely statute-of-limitations issues with respect to some of Plaintiff's FLSA and NYLL claims that would probably defeat Plaintiff's claims even if successor liability were found.  Although Rutland Realty (and EPP) raised the affirmative defense that some or all of Plaintiff's claims are barred by the statute of limitations, neither has raised it in the motion for summary judgment.  See ECF No. 75 ¶ 111; ECF No. 76 ¶ 111.  As

## VIII.    Conclusion

Based on the above analysis, it is respectfully recommended that the District Court find

that a reasonable jury could not conclude that:

- Rutland Realty formally controlled Plaintiff's employment, see Section IV.a, supra;
- Rutland Realty functionally controlled Plaintiff's employment, see Section IV.b, supra;
- EPP formally controlled Plaintiff's employment, see Section V.a, supra; or
- EPP functionally controlled Plaintiff's employment, see Section V.b, supra.

As a result, it is respectfully recommended that the District Court find that a reasonable jury

could not conclude that Rutland Realty and EPP jointly employed Plaintiff such that either or

both could be held liable for Plaintiff's FLSA and NYLL wage-and-hour claims.

Second, it is respectfully recommended that the District Court find that there is no

genuine issue of disputed material fact that could be found in Plaintiff's favor to permit a

reasonable jury to conclude that Mr. Duhaney and Ms. Clouden allegedly directed Plaintiff's

employment at the five buildings and the store as described as part of a larger single integrated

enterprise of which Rutland Realty and EPP were a part.  See Section VI, supra.

Third, it is respectfully recommended that the District Court find that there is no genuine

issue of material fact that could be found in Plaintiff's favor that would permit a reasonable jury

to conclude that Rutland Realty is liable for Plaintiff's alleged wage-and-hour claims under a

theory of successor liability.  See Section VII, supra.

For the foregoing reasons, it is respectfully recommended that the District Court grant

---

such, this Court declines to consider the issue on this motion.  See Chaohui Tang v. Wing Keung Enters., 210 F. Supp. 3d 376, 406 (E.D.N.Y. 2016) (finding magistrate judge properly did not consider FLSA and NYLL statute-of-limitations issue because, though listed as an affirmative defense in responsive pleadings, the defendants did not raise it in their summary judgment motion such that the issue "was not referred to the magistrate judge").

Moving Defendants' motion for summary judgment, and enter judgment in the Moving Defendants' favor.  See ECF No. 130.

## IX.    Objections

This Report and Recommendation will be posted on the docket.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14)-day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals.  See Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." (internal quotation marks & citation omitted)).

Dated:  Brooklyn, New York
         August 11, 2022

                                        _Vera M. Scanlon_
                                          VERA M. SCANLON
                                        United States Magistrate Judge