UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- x
CLIFTON DACAS,                                          :
                                                       :
                            Plaintiff,                 :
                                                       :
                                                       :         **REPORT AND**
                  -against-                            :         **RECOMMENDATION**
                                                       :
VINCENT DUHANEY, JEANETTE                              :         17 Civ. 3568 (EK) (VMS)
CLOUDEN a/k/a JEANETTE DUHANEY,                        :
RUTLAND ROAD MEAT AND FISH, 986                        :
RUTLAND REALTY, LLC, 144 HOLDINGS                      :
LLC, EPP MANAGEMENT LLC and JOHN                       :
DOES 1-10,                                             :
                                                       :
                            Defendants.                :
--------------------------------------------------------- x

**Scanlon, Vera M., United States Magistrate Judge:**

Plaintiff Clifton Dacas ("Plaintiff") brought this action against Defendants Vincent

Duhaney ("Mr. Duhaney"), Jeanette Clouden a/k/a Jeanette Duhaney ("Ms. Clouden"), Rutland

Road Meat and Fish ("RRMF"), 986 Rutland Realty LLC ("Rutland Realty"), 144 Holdings LLC

("144 Holdings"), EPP Management LLC ("EPP") and John Does 1-10 (collectively,

"Defendants") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.; the

New York Labor Law ("NYLL") §§ 650 et seq., and 663; NYLL §§ 190 et seq.; and 12 New

York Codes, Rules and Regulations §§ 142-2.1, 142-2.2, 142-2.4, 142-2.7 and 142-2.9.  See ECF

No. 70.

Before the Court is Plaintiff's motion for a default judgment against RRMF and 144

Holdings ("Defaulting Defendants").  See ECF No. 140.  For the following reasons, the Court

respectfully recommends that the District Court 1) deny default judgment as to both Defaulting

Defendants because Plaintiff failed to comply with Local Civil Rule 55.2(c); 2) deny a default

judgment for Plaintiff's FLSA claims that accrued prior to June 13, 2014 because they are barred

by the statute of limitations; 3) deny a default judgment as to RRMF because Plaintiff failed to allege sufficient facts to establish that RRMF is liable for alleged FLSA violations that occurred after RRMF dissolved in 2012; and 4) deny a default judgment as to 144 Holdings LLC because Plaintiff failed to allege sufficient facts to establish that 144 Holdings is liable under the FLSA. The Court respectfully recommends that default judgment be denied as to the NYLL claims for the violation of Local Civil Rule 55.2(c) and as premature.  It is further respectfully recommended that if the District Court adopts the recommendation to deny the default-judgment motion, the District Court enter an order to show cause as to a) why the District Court should not dismiss the federal claims against RRMF and 144 Holdings for failure to allege claims upon which relief may be granted despite Plaintiff's multiple opportunities to complete the record; b) why the District Court should not dismiss the federal claims against Jeanette Clouden AKA Jeanette Duhaney and Vincent Duhaney for failure to serve them timely; c) why the District Court should not decline to exercise supplemental jurisdiction over the state law claims should the federal claims be dismissed; and d) why, if the Court were to retain jurisdiction over the state claims, Plaintiff would have standing to bring his wage-statement-and-notice claims in federal court.

## I.    Procedural History

### a.  Proceedings Against Rutland Realty And EPP

Plaintiff commenced this action in June 2017.  See ECF No. 1.  Rutland Realty and EPP answered.  ECF No. 9.  After an unsuccessful mediation, Rutland Realty and EPP made an opposed motion for judgment on the pleadings.  See ECF Nos. 26, 28-29.  Plaintiff moved for leave to file an amended complaint.  See ECF Nos. 64-65.  The Court granted Plaintiff's request for leave to file an amended complaint and denied Rutland Reality and EPP's motion for

judgment on the pleadings.  See ECF No. 67, report & recommendation adopted, ECF No. 69.

Plaintiff filed his amended complaint.  See ECF No. 70.  Rutland Realty and EPP answered.  See

ECF Nos. 75-76.  After performing discovery, Rutland Realty and EPP moved for summary

judgment.  See Dkt. Entry 2/4/2021; Dkt. Entry 3/29/2021; ECF Nos. 129-32.  The Court granted

summary judgment, concluding, as relevant here, that Plaintiff failed to establish that Rutland

Realty and EPP acted as Plaintiff's employers for the purposes of the FLSA and NYLL.  See

ECF No. 134, report & recommendation adopted, ECF No. 138.

### b.  Proceedings Against Defaulting Defendants

Plaintiff requested, and the Clerk of the Court granted, a certificate of default against

Defaulting Defendants.  See ECF No. 20; Dkt. Entry 3/13/2018.  Plaintiff filed his first default

judgment motion against Defaulting Defendants.  See ECF Nos. 22-23.

In light of Plaintiff's filing of the amended complaint, see ECF No. 70, the Court denied

as moot the default-judgment motion that Plaintiff had brought against Defaulting Defendants

with leave to renew, see ECF No. 73.  Plaintiff returned executed summonses for Defaulting

Defendants and filed affidavits of service stating that Plaintiff had served each Defaulting

Defendant by delivering duplicate copies of the summons and amended complaint to the New

York Secretary of State.  See ECF Nos. 77-78.  After Defaulting Defendants failed to answer or

otherwise respond to Plaintiff's amended complaint, Plaintiff requested, and the Clerk of the

Court granted, an entry of default against them.  See ECF Nos. 89, 91.  Plaintiff filed his second

default-judgment motion against Defaulting Defendants.  See ECF No. 94.  Magistrate Judge

Steven M. Gold[1] ordered that the motion be administratively stayed until litigation with the

---

[1] This case was transferred to the undersigned on January 7, 2021.  See Dkt Entry 1/7/2021.

3

appearing Defendants had been resolved, with leave to renew.  See ECF No. 96.

After granting summary judgment to Rutland Realty and EPP, the Court permitted Plaintiff to renew the default-judgment motion against Defaulting Defendants.  See ECF No. 138.  Plaintiff then filed a motion for default judgment against Defaulting Defendants.  See ECF No. 140.  Plaintiff attached the following to the motion for default judgment: (1) a memorandum in support, see ECF 140-1; (2) Plaintiff's declaration in support, ECF No. 140-2; (3) Plaintiff's counsel's declaration in support, ECF No. 140-3; (4) affidavits of service of the summons and amended complaint for Defaulting Defendants, ECF Nos. 140-4, 140-5; (5) the certificate of default, ECF No. 140-7; (6) a spreadsheet of the unpaid minimum wages and overtime payments allegedly owed under the NYLL for the period of June 13, 2011 to December 30, 2016, ECF No. 140-8; (7) a spreadsheet of the alleged spread-of-hours damages under the NYLL from the same period, ECF No. 140-9; (8) a spreadsheet of alleged damages for unpaid wages, overtime, spread of hours and interest owed under the FLSA for the period of March 23, 2014 to December 30, 2016, ECF No. 140-10; and (9) a table of billed hours, billing rates and costs by Plaintiff's counsel, ECF No. 140-11.  Plaintiff did not file proof that the default-judgment motion papers were mailed to Defaulting Defendants.

In light of the filing of the renewed motion for a default judgment, see ECF No. 140, the Court scheduled a conference, to which it invited Defaulting Defendants to attend, during which Plaintiff was instructed to be prepared to discuss for what length of time Plaintiff had worked for RRMF; the extent to which RRMF was liable for damages despite being apparently dissolved in 2012; and to what extent Plaintiff was ever employed by 144 Holdings, see Dkt. Entry 5/22/2023.  Defaulting Defendants did not appear at the conference.  The Court directed Plaintiff to file supplemental letters as to (1) the liability of dissolved businesses; (2) a statement of

Plaintiff's employment with or work for Defaulting Defendants; and (3) which portions of Plaintiff's attorneys' fees and costs application were attributable to work done with respect to Defaulting Defendants.  See Dkt. Entry 5/31/2023.  Plaintiff filed supplemental letters.  See ECF Nos. 141-142.  The supplemental letters attach a chart tabulating the attorneys' fees in matters relating solely to Defaulting Defendants, equaling $27,069, see ECF No. 141-1, and a supplemental declaration by Plaintiff, ECF No. 142-1, the contents of which are discussed below.

## II.    Factual Summary

### a.   Plaintiff's Allegations Regarding RRMF

The Court previously recounted Plaintiff's allegations in its report and recommendation relating to Rutland Reality and EPP.  See ECF No. 134 at 4-13.  For ease of reference, the relevant factual allegations are included here and supplemented as necessary.  Of greatest relevance on this motion is that Plaintiff's statements lack specificity as to which entity was or entities were his employer or employers during the 2014 to 2016 period.  According to Plaintiff in his amended complaint and supplemental declaration, between April 2003 and December 2016,[2] Plaintiff worked as a general laborer/grocery clerk at RRMF, a grocery and deli operating out of a commercial space at 986 Rutland Road, Brooklyn, New York 11212.  See ECF Nos. 70 ¶¶ 17-19, 39; 140-2 ¶ 3.  Mr. Duhaney and Ms. Clouden served as the owners and general managers of RRMF, being "responsible for setting policies and overseeing the operations . . . including but not limited to its employment practices."  ECF No. 70 ¶¶ 11-12.  Plaintiff's general laborer/grocery clerk duties included ensuring that produce, meat, fish and dry stocks were rotated and displayed on shelves;

---

[2] Plaintiff does not provide an exact date at which he ceased his employment, but, rather, he estimates that it was approximately December 2016.  See ECF No. 140-2 ¶ 3.

unloading products from trucks; organizing stock rooms; cleaning cases and shelves; mopping and sweeping the sales areas and stock rooms; and assisting in other duties as requested by Mr. Duhaney and Ms. Clouden.  See id. ¶ 61.

RRMF was dissolved as a New York corporation on or about January 25, 2012.  See id. ¶ 62.  The New York State Department of State, Division of Corporations' website reflects that RRMF was dissolved in 2012 and has since been inactive.  See N.Y. Dep't of State, "Entity Filing History,"  https://apps.dos.ny.gov/publicInquiry/EntityDisplay (last accessed 8/21/2023).  Despite this dissolution, Plaintiff's "employment remained the same," the "remaining . . . Defendants continued to be controlled by the same parties," and he continued to perform the same work "on behalf of the remaining . . . Defendants."  ECF No. 70 ¶ 63.  Plaintiff has not provided information as to RRMF continuing its operations beyond its dissolution.  Plaintiff also alleges that at least one other nonparty business, Kennedy Fried Chicken, thereafter operated in the same commercial space at 986 Rutland Road where RRMF had been located.  See ECF No. 70 ¶¶ 32-33, 62-63.

### b.  Plaintiff's Allegations Regarding 144 Holdings

During the same period as his work as a general laborer/grocery clerk for RRMF, Plaintiff worked for Jeanette Clouden and Vincent Duhaney as a superintendent/porter at five real properties they owned in the neighborhood in connection with communal/hostel-style apartments operated in those buildings.  See ECF No. 70 ¶¶ 20-22.  144 Holdings LLC had its office at 580 Crown Street, Apt. 26, Brooklyn, NY 11213, and Ms. Clouden was its controlling member.  See id. ¶ 14.  Plaintiff does not allege that the 580 Crown Street address was one of the five real properties that Jeanette Clouden or Vincent Duhaney owned.  See id. ¶ 21.  Plaintiff does not specifically allege that 144 Holdings controlled any real properties.  See id. ¶ 14.  Plaintiff's superintendent/porter duties included "overall maintenance of the buildings and all

6

areas related to the day-to-day maintenance operations of the communal spaces." Id. ¶ 64. Plaintiff alleges generally that he "worked as a superintendent/porter for the Defendants." Id.  In a deposition taken for the purposes of the summary judgment proceedings, Plaintiff was asked if he had "ever heard of a company called 144 Holdings LLC," to which Plaintiff replied "No, sir." ECF No. 130-11 at 38:3-5.  Plaintiff's supplemental declaration does not provide details as to his work with 144 Holdings; it discusses his work with RRMF.  See ECF No. 142-1.

### c.  Alleged FLSA And NYLL Violations

Plaintiff alleges in his amended complaint that, at all relevant times, in performing his general laborer/grocery clerk duties at 986 Rutland Road and his superintendent/porter duties at all five buildings, he worked approximately 140 hours a week (seven days a week, between 19 and 20 hours per day), and in exchange, received a predetermined $220 weekly salary and free lodging.  See ECF No. 70 ¶¶ 67, 77.[3]  Plaintiff alleges that this compensation did not constitute due payment for all the hours he worked or overtime compensation under the FLSA and NYLL. See id. ¶¶ 65-77.  Plaintiff also alleges that he never received records pertaining to his wages and hours worked as required by law.  See id. ¶¶ 79-80.  Plaintiff claims that Defaulting Defendants "knowingly and willfully" violated the FLSA and NYLL.  See id. ¶ 51.

Plaintiff's amended complaint alleges generally and without specificity that all named Defendants, including Defaulting Defendants, jointly employed him such that they are all liable for Plaintiff's alleged wage-and-hour claims.  See ECF No. 70.  Plaintiff does not explain how the individual Defendants operated as his employers via the Defaulting Defendants, if they did.

---

[3] In his declaration, Plaintiff alleged that he worked "at least 16 hours per day, and often more." ECF No. 140-2 ¶ 8.  This is a significant reduction of the hours alleged in the complaint but still indicates at least 112 hours of work per week.

Plaintiff does not allege in the amended complaint how many hours of his alleged work were performed in his capacity as a general laborer/grocery clerk at RRMF, which operated in a commercial space at 986 Rutland Road, and how many hours were performed as the superintendent/porter for 144 Holdings and the other real estate Defendants.  In his supplemental declaration, Plaintiff estimated that he "spent approximately fifty (50) percent of [his] total time completing work" for RRMF, "as compared to the residential properties."  ECF No. 142-1 ¶ 5. Plaintiff does not provide facts with regards to 144 Holdings in the supplemental declaration, and he does not offer facts as to how his alleged hours worked as a superintendent/porter were split among the five residential properties or how many hours he spent working for 144 Holdings LLC, if any.

### d.  Facts Regarding Whether Moving Defendants Were Plaintiff's Employers

### i.  Plaintiff Was Allegedly Jointly Employed By Defendants

Plaintiff alleges that, at all relevant times, the Defendants "jointly employed" him as a general laborer/grocery clerk at RRMF and a superintendent/porter at the five residential properties.  ECF No. 70 ¶ 39.  He performed his work "jointly," and Defendants exercised "shared power and control of [Plaintiff] and the terms and conditions of his employment." Id. ¶ 46.  Defendants "jointly had the power to determine [Plaintiff's] rate and method of payment," "shared common control" of Plaintiff, and each had a "substantial control over Plaintiff's wages" and the alleged FLSA and NYLL violations.  Id. ¶¶ 39-40, 43.  Plaintiff alleges that all Defendants "had the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules, and (iv) otherwise affect the quality of employment of the Plaintiff."  Id. ¶ 50.  Plaintiff alleged that the corporate Defendants "are and

were interrelated and unified," and that each of the residential properties "shared a common management and were centrally controlled and/or owned" by Defendants.  Id. ¶¶ 34-35.

### ii. Mr. Duhaney And Ms. Clouden Were The Only Persons Who Directly Gave Plaintiff Assignments, Gave Him Work Or Told Him What To Do In Connection With His Employment

Plaintiff acknowledges in his declaration that Mr. Duhaney and Ms. Clouden were his main contacts who interacted with him on a daily basis.  ECF No. 140-2 at 4.  Plaintiff testified at his deposition that, during his employment from 2003 through 2016, Mr. Duhaney and Ms. Clouden were the only persons who gave him assignments, gave him work or told him what to do.  See ECF No. 130-11 at 36:2-21.  Plaintiff's interrogatory responses identified only Mr. Duhaney and Ms. Clouden as persons with whom Plaintiff communicated about his employment. See ECF Nos. 130-9 ¶ 5; 130-10 ¶ 5.  Plaintiff testified at his deposition, and Plaintiff's counsel acknowledges in a declaration supporting the default-judgment motion, that although Mr. Duhaney and Ms. Clouden exclusively directed Plaintiff's employment as described, Plaintiff lacked knowledge regarding who operated the corporate Defendants.  See ECF Nos. 131-10 at 44:8-25; 140-3 ¶ 51.  Plaintiff's submissions lack specific allegations as to RRMF and 144 Holdings being his actual employers, such as paychecks, timesheets or any other indicia of corporate involvement.

## III. Discussion

### a. Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure, which governs a motion for a default judgment, provides for a two-step process.  See Fed. R. Civ. P. 55; Priestley v. Headminder, Inc., 647 F.3d 497, 504-05 (2d Cir. 2011).  First, the moving party must obtain a certificate of default from the Clerk of the Court.  See Fed. R. Civ. P. 55(a).  Second, after a certificate of default is

issued, the plaintiff may move for a default judgment.  See id.  The trial court has the "sound

discretion" to grant or deny a motion for default judgment.  See Enron Oil Corp. v. Diakuhara,

10 F.3d 90, 95 (2d Cir. 1993).  In light of the Second Circuit's "oft-stated preference for

resolving disputes on the merits," default judgments are "generally disfavored," and doubts

should be resolved in favor of the defaulting party.  Id. at 95-96 (recognizing "the responsibility

of the trial court to maintain a balance between clearing its calendar and affording litigants a

reasonable chance to be heard").  The court must therefore ensure that the plaintiff satisfied all

required procedural steps in moving for default judgment, see E.D.N.Y. Local Civ. R. 55.2, and

the plaintiff's allegations, when accepted as true, establish liability as a matter of law, see Finkel

v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009).

      In considering a motion for default judgment, courts generally accept all well-pleaded

factual allegations of liability.  See Cement & Concrete Workers Dist. Council Welfare Fund v.

Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012) ("[A] party's default is deemed

to constitute a concession of all well pleaded allegations of liability."); City of N.Y. v. Mickalis

Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("[A] defendant who defaults thereby admits

all 'well-pleaded' factual allegations contained in the complaint.").  "However, it is also true that

a district court need not agree that the alleged facts constitute a valid cause of action."  Mickalis

Pawn Shop, 645 F.3d at 137.  The court is obliged only to accept well-pleaded allegations of

liability but is not required to credit "mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009); see Finkel, 577 F.3d at 84; Mickalis Pawn Shop, 645 F.3d at 137 n.23 ("[A]

district court may not enter a default judgment unless the plaintiff's complaint states a valid

facial claim for relief.").

### b. Service Of Process

"Valid service of process is a prerequisite to a district court's assertion of personal jurisdiction over a defendant." See Am. Inst. of Certified Pub. Accountants v. Affinity Card, Inc., 8 F. Supp. 2d 372, 375 (S.D.N.Y. 1998). The Second Circuit Court of Appeals has stated: ". . . [W]hen a defendant declines to appear, a plaintiff generally proceeds by means of a motion for default judgment . . . and we agree with our sister circuits that before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 213 (2d Cir. 2010); see Mickalis Pawn Shop, 645 F.3d at 133. To that end, "[a] court may not enter default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. R. Baker & Son All Indus. Servs., Inc., No. 13 Civ. 4590 (JS) (GRB), 2014 WL 6606402, at *2 (E.D.N.Y. Aug. 4, 2014), report & recommendation adopted, 2014 WL 4536911 (E.D.N.Y. Sept. 11, 2014) (internal quotation marks omitted).

Under Federal Rule of Civil Procedure 4(h)(1), service on a "corporation . . . partnership, or other unincorporated association that is subject to suit under a common name" can occur "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B).

For New York corporations, the New York Secretary of State is an "agent authorized by appointment or by law to receive service of process" who can accept service permitted under Federal Rule of Civil Procedure 4. Logan v. World Luxury Cars, Inc., No. 15 Civ. 248 (ENV)

(PK), 2022 WL 2466834, at *5 (E.D.N.Y. Mar. 30, 2022), report & recommendation adopted, 2023 WL 156878 (E.D.N.Y. Jan. 11, 2023); Trustees of Empires State Carpenters Annuity, Apprenticeship, Lab.-Mgmt. Co-op., Pension & Welfare Funds v. Precision Concrete & Masonry, Inc., No. 12 Civ. 5645 (ADS) (GRB), 2013 WL 4761146, at *5 (E.D.N.Y. Sept. 3, 2013).  This is true even if the corporation has dissolved.  See Lu Nan Fan v. Jenny & Richard's Inc., No. 17 Civ. 6963 (WFK) (RLM), 2019 WL 1549033, at *4 (E.D.N.Y. Feb. 22, 2019), report & recommendation adopted, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019) ("Nevertheless, under New York law, '[i]t is well settled that personal jurisdiction over a dissolved corporation may be obtained through service upon the Secretary of State[.]'") (quoting Bruce Supply Corp. v. New Wave Mech., Inc., 4 A.D.3d 444, 445, 773 N.Y.S.2d 408, 409 (2d Dep't 2004)).

Here, Plaintiff properly served Defaulting Defendants.  Plaintiff returned executed summonses and complaints for RRMF and 144 Holdings, both of which were served on the New York Secretary of State.  See ECF Nos. 77-78.  Because the New York Secretary of State is an agent authorized to accept service of process, this service satisfied the requirements of Rule 4(h)(1) for Defaulting Defendants.

### c.  Local Civil Rule 55.2(c)

Local Civil Rule 55.2(c) requires that "all papers submitted to the Court pursuant to Local Civil Rule 55.2(a) or (b) above shall simultaneously be mailed to the party against whom a default judgment is sought at the last known residence of such party (if an individual) or the last known business address of such party (if a person other than an individual).  Proof of such mailing shall be filed with the Court."  Local Civ. R. 55.2(c).  Service of the motion on non-appearing defendants is necessary because "mailing notice of such an application is conducive to both fairness and efficiency[.]"  Committee Note, Loc. Civ. R. 55.2; see D'Arrigo Bros. Co. of

New York v. Met Food Basics, Inc., No. 19 Civ. 5474 (KAM) (VMS), 2021 WL 781745, *5 (E.D.N.Y. Mar. 1, 2021)  (denying motion for default judgment for failure to perform the required mailings).  Compliance with Local Civil Rule 55.2(c) requires that a plaintiff mail "the entire application for default judgment."  Ahn v. Sun Cleaners Inc., No. 19 Civ. 05919 (DLI) (PK), 2021 WL 7186026, at *4 (E.D.N.Y. Feb. 1, 2021) (noting that plaintiff failed to comply with Local Civ. R. 55.2(c) by attaching only a copy of the motion and affidavit in support), report & recommendation adopted by ECF Order (E.D.N.Y. Mar. 18, 2022).  Absent special circumstances, strict compliance with Local Civil Rule 55.2(c) is required.  See Castillo v. Chapines LLC, No. 22 Civ. 203 (LDH) (RLM), 2022 WL 17253521, at *2 (E.D.N.Y. Nov. 28, 2022) (denying default judgment for "failure to strictly comply with Local Civil Rule 55.2").  Failure to comply with the mailing requirements is a ground upon which to deny a motion for default judgment.  See D'Arrigo Bros., 2021 WL 781745, *5 (providing failure to comply with Local Rules as to a default judgment, including requisite mailings, as a separate reason to deny the motion).

Plaintiff has failed to show compliance with Local Civil Rule 55.2(c).  Plaintiff included the affidavits of service of the summons and amended complaint on Defaulting Defendants, see ECF Nos. 140-5, 140-6, but Plaintiff did not file proof of mailing the default-judgment motion papers or Plaintiff's supplemental declaration.[4]  Given this failure, it is respectfully recommended that the Court deny the motion for default judgment on this ground, in addition to

---

[4] The Court notes that Plaintiff provided an affidavit of service on Defaulting Defendants with Plaintiff's second motion for default judgment.  See ECF No. 95.  Those motion papers were different from those in the instant motion, consisting of a July 2020 declaration from Plaintiff's attorney, proof of service of the summons and amended complaint on Defaulting Defendants, the certificate of default and a proposed judgment.  Compare ECF No. 94 with ECF No. 140.

the substantive grounds as to the FLSA provided below.

### d. FLSA Statute Of Limitations

"The statute of limitations for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" Whiteside v. Hover-Davis, Inc., 995 F.3d 315, 319 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)). Because Plaintiff alleges that Defendants' violations of the FLSA were knowing and willful, the three-year limitations period applies. See Easterly v. Tri–Star Transport Corp., No. 11 Civ. 6365 (VB), 2015 WL 337565, at *6 (S.D.N.Y. Jan. 23, 2015) ("[A]s [the p]laintiff alleges that [the defendant in default] committed FLSA violations willfully, . . . the three-year federal period applies.") (collecting cases).

Here, Plaintiff filed his complaint on June 13, 2017; the FLSA limitations period therefore extends to June 13, 2014. See ECF No. 1. Plaintiff's FLSA claims therefore cover only the period of his employment with RMMF and 144 Holdings from June 13, 2014 to December 2016. See ECF No. 140-3 ¶ 15. To the extent Plaintiff seeks damages for an earlier period,[5] it is respectfully recommended that default judgment as to any FLSA claim for the period prior to June 13, 2014 be denied.

---

[5] In his amended complaint, Plaintiff alleges that he began working for Defendants in April 2003 and seeks damages for the "entire period of his employment with Defendants." ECF No. 70 ¶¶ 61,66. In the damages spreadsheets, Plaintiff calculates damages with differing initial dates. For the claims for which he seeks damages under the NYLL, Plaintiff begins his calculations at June 13, 2011. See ECF No. 140-9 at 2. For the damages under the FLSA, Plaintiff begins his calculations with March 23, 2014. See ECF No. 140-10 at 2. It appears that Plaintiff acknowledges the impact of the statute of limitations, but it is unclear why Plaintiff begins the calculations in March 2014 instead of June 2014.

### e. Liability Of A Dissolved Corporate Defendant

### i. A Dissolved Corporation Has Limited Continuing Liability

A dissolved corporation remains liable for claims that accrued prior to the corporation's dissolution.  See In re Bernard L. Madoff Inv. Secs. LLC, No. 21 Civ. 2334 (CM), 2022 WL 493734, at *19 (S.D.N.Y. Feb. 17, 2022) (holding that a dissolved corporation may be liable even where action was filed after dissolution where plaintiffs' claims accrued prior to dissolution); J & J Sports Prods., Inc. v. Morocho, No. 18 Civ. 2303 (AMD) (RML), 2019 WL 1339198, at *3 (E.D.N.Y. Feb. 27, 2019) ("Because [defendant] was an active corporation at the time of the alleged infringement, it is subject to liability . . . ."), report & recommendation adopted, 2019 WL 1333245 (E.D.N.Y. Mar. 25, 2019).   After dissolution, "dissolved corporations may be the subject of suits for post-dissolution actions where they remain a de facto corporation."  J & J Sports Prods., Inc. v. Tellez, No. 11 Civ. 2823 (SMG), 2011 WL 6371521, at *2 (E.D.N.Y. Dec. 20, 2011); Briarpath Ltd. L.P. v. Thomas, 265 F. Supp. 2d 219, 223 (S.D.N.Y. 2003) (holding that, where a former corporation continued to operate de facto after its official dissolution, its "dissolution [did] not insulate it from liability").  "A corporation may be held liable on a cause of action that accrues after dissolution if the corporation continued its operations, operated its premises, and held itself out as a de facto corporation, notwithstanding its dissolution."  Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Strong Partitions Inc., No. 13 Civ. 6648 (PKC), 2014 WL 1275696, at *3 (S.D.N.Y. Mar. 25, 2014) (internal quotation marks omitted).  For example, a court has found that a corporate defendant was liable for claims accruing after dissolution because it "continued to function" as it did prior to dissolution and "represented itself as a corporation to the New York State Liquor Authority."

15

Tellez, 2011 WL 6371521, at *2; see Strong Partitions, 2014 WL 1275696, at *3 (concluding that a corporate defendant functioned as a de facto corporation where it operated its premises and maintained an active website and phone number despite its dissolution). Dissolved corporations "cannot be held liable for actions that occurred subsequent to their legal dissolution[,]" where a plaintiff "has not sufficiently alleged how they could be liable for [such] actions." Hernandez v. Delta Deli Mkt. Inc., No. 18 Civ. 375 (ARR) (RER), 2019 WL 643735, at *3-4 (E.D.N.Y. Feb. 12, 2019); see Lu Nan Fan, 2019 WL 1549033, at *7 (finding corporate defendants were liable only for actions taken in post-dissolution period for which plaintiff had sufficiently alleged defendants' involvement).

### ii. Plaintiff Has Not Sufficiently Pleaded That RRMF Is Liable For The Alleged FLSA Violations After Its Dissolution

As stated above, supra, Sec. III.c., the FLSA statute of limitations permits only Plaintiff's claims from June 13, 2014 to approximately December 2016. As Plaintiff acknowledges, RRMF was legally dissolved, having entered dissolution on or about January 25, 2012. See ECF No. 70 ¶ 62. Despite this, Plaintiff argues that RRMF remains liable because Plaintiff's "employment remained the same," the "remaining . . . Defendants continued to be controlled by the same parties," and Plaintiff continued to perform the same work "on behalf of the remaining . . . Defendants." Id. ¶ 63. As the allegations in the amended complaint do not show that RRMF had any continuing activity, even as an unincorporated entity, Plaintiff was given the opportunity to supplement the record as to RRMF. See Dkt. Entry 5/31/2023 Order. Plaintiff has provided some additional information, but not about continuing RRMF operations. See ECF No. 141 at 1-2.

16

Plaintiff's allegations are not sufficient to show that RRMF could be liable for any alleged wrongful conduct claims that accrued after its dissolution in 2012.  First, Plaintiff's allegation that he continued to work for the other remaining Defendants after RRMF dissolved is not dispositive of whether RRMF itself continued to operate as a de facto corporation.  ECF No. 70 ¶ 63.  Second, Plaintiff does not allege that RRMF continued to "represent[] itself as a corporation."  Tellez, 2011 WL 6371521, at *2.  Plaintiff does not allege or provide evidence that RRMF was, during the period of employment, holding itself out as a still-operating corporation.  Third, he does not allege a post-dissolution use of any public indicia of RRMF operations such as signage, sales material, advertisements or continuity of personnel, other than Plaintiff, to show that RRMF continued to exist de facto.  See Strong Partitions, 2014 WL 1275696, at *3.  Fourth, despite Plaintiff's claim that his RRMF employment remained the same in the same location, he alleges that a nonparty business, Kennedy Fried Chicken, became housed at the 986 Rutland Road address where RRMF was located.  ECF No. 70 ¶¶ 32-33, 62-63.  Plaintiff does not allege that Kennedy Fried Chicken replaced RRMF, or that this new business was affiliated with Defendants or took over Defendants' operations, which undercuts the claim that RRMF continued to "operate[] its premises" post-dissolution.  Strong Partitions, 2014 WL 1275696, at *3.

Plaintiff's allegations do not offer sufficient facts upon which the Court could conclude that RRMF is liable for any post-dissolution violations of the FLSA.  It is therefore respectfully recommended that Plaintiff's motion for default judgment be denied as to Plaintiff's FLSA claims against RRMF.

### f.  FLSA Claims Against 144 Holdings

#### i.  Plaintiff Has Not Alleged Facts To Show That 144 Holdings Was His Employer

As noted above, Plaintiff testified that he had never heard of 144 Holdings.  See ECF No. 130-11 at 38:3-5.  Where the plaintiff's statements contradict the pleadings, the court may rely on the plaintiff's testimony.  See Lamaka v. Russian Desserts Inc., No. 18 Civ. 7354 (ILG) (VMS), 2021 WL 2188280, at *4 (E.D.N.Y. Feb. 12, 2021) (in determining a motion for default judgment, accepting the plaintiff's testimony over allegations in a complaint), report & recommendation adopted, 2021 WL 2184870 (E.D.N.Y. May 28, 2021); see Avedana v. Casa Ofelia's Bakery LLC, No. 20 Civ. 2214 (DG) (AKT), 2021 WL 4255361, at *10 (E.D.N.Y. Aug. 19, 2021) (accepting the plaintiff's sworn testimony over contradictory allegations in the complaint, in the context of a default-judgment motion), report & recommendation adopted, 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021); Chuchuca v. Creative Customs Cabinets Inc., No. 13 Civ. 2506 (RLM), 2014 WL 6674583, at *9 (E.D.N.Y. Nov. 25, 2014) (denying default judgment where "[p]laintiff's own testimony" contradicted his conclusory allegations of joint employment); see also AB ex rel. EF v. Rhinebeck Cent. Sch. Dist., 361 F. Supp. 2d 312, 316 (S.D.N.Y. 2005) (holding, in summary judgment context, that when "[f]aced with deposition testimony that contradicts an affidavit and a complaint, this court must accept [the] sworn testimony").  Plaintiff has not alleged sufficient specific facts that 144 Holdings was his employer.

#### ii.  A Corporate Defendant May Be Indirectly Liable As An Employer

Where, as here, a plaintiff does not make out a claim that a defendant was directly liable for the alleged wage-and-hour violations, the law permits a plaintiff to establish liability via the

defendants' close interrelationships with other defendants.  The Court thus considers whether a joint-employer or single-enterprise theory could give rise to viable theory of liability in this case. Plaintiff claims that all Defendants, without referring to 144 Holdings specifically, "jointly employed" him during the relevant work period, and that all Defendants "had the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules, and (iv) otherwise affect the quality of employment of the Plaintiff."  ECF No. 70 ¶¶ 39, 50.  The Court addresses these allegations of the liability of 144 Holdings under the joint-employer doctrine and the single-integrated employer doctrine.

In determining whether an entity falls under the definition of an "employer" pursuant to the FLSA, the court's "inquiry focuses on the 'economic reality' of the relationship between the purported employer and the worker[] in question."  Chen v. DG & S NY, Inc., 406 F. Supp. 3d 216, 221 (E.D.N.Y. 2016) (quoting Barfield v. N.Y. City Health & Hosps. Corp., 537 F. 3d 132, 141-42 (2d Cir. 2008)).  "[T]he economic reality test turns on objective economic realities, not subjective beliefs[.]"  Hernandez v. Sikka, No. 17 Civ. 4792 (SJF) (SIL), 2020 WL 1083706, at *12 (E.D.N.Y. Mar. 6, 2020).  "This economic reality test . . . asks how much authority the 'employer' exercised over the 'employee[].'"  Chen, 406 F. Supp. 3d at 221 (citation omitted). The Second Circuit has treated employment for FLSA purposes "as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances."  Barfield, 537 F.3d at 141-42.

Four factors set forth by the Second Circuit in Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984), are used to assess a putative employment relationship on a theory of formal control.  See Zhao v. Ke Zhang Inc., No. 18 Civ. 6452 (EK) (VMS), 2021 WL 1210369, at *4 (E.D.N.Y. Mar. 31, 2021).  They are "whether the alleged employer (1) had the

power to hire and fire the employee[], (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. (quoting Carter, 735 F.2d at 12); Gallego, 2018 WL 4735710, at *4 (finding that the defendant was not the plaintiffs' employer because, inter alia, there was "no indication that [the defendant] was involved . . . in determining rates of pay"). None of these so-called Carter factors is dispositive, and courts may consider other factors if appropriate. See Tapia v. BLCH 3rd Ave. LLC, 906 F.3d 58, 61 (2d Cir. 2018); Barfield, 537 F.3d at 142-43 (quoting Brock v. Superior Care, Inc., 840 F.2d 1054, 1058-59 (2d Cir. 1988)); Zhao, 2021 WL 1210369, at *4 ("These factors are sufficient, but not necessary, to establish employer status under the FLSA."). "The Second Circuit has made clear that while satisfaction of the formal control factors can be sufficient to establish employment status, it is not necessary. Even if a putative joint employer did not exercise formal control, it may nevertheless have exercised sufficient functional control over a worker to satisfy the FLSA definition of employer." Gil v. Pizzarotti, LLC, No. 19 Civ. 3497 (MKV), 2021 WL 1178027, at *5 (S.D.N.Y. Mar. 29, 2021) (citations & quotations omitted).

### iii.   Joint-Employer Doctrine

"The joint[-]employer doctrine applies where there is no single integrated enterprise, but where two employers handle certain aspects of their employer-employee relationship jointly." Fowler v. Scores Holding Co., 677 F. Supp. 2d 673, 681 (S.D.N.Y. 2009) (quotation omitted); see Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 198 (2d Cir. 2005) ("A conclusion that employers are 'joint' assumes that they are separate legal entities, but that they . . . handle certain aspects of their employer-employee relationship jointly.") (quoting Clinton's Ditch Coop. Co. v. NLRB, 778 F.2d 132, 137 (2d Cir. 1985)). "A joint employer relationship may be found

20

to exist where there is sufficient evidence that the respondent had immediate control over the other company's employees."  Fowler, 677 F. Supp. 2d at 681 (citation & quotation omitted).

A plaintiff must offer more than mere "boilerplate allegations" to "establish liability after default" on the theory of joint employment.  Chen v. Best Miyako Sushi Corp., No. 16 Civ. 2012 (JGK) (BCM), 2021 WL 707273, at *12 (S.D.N.Y. Feb. 1, 2021), report & recommendation adopted, 2021 WL 706412 (S.D.N.Y. Feb. 19, 2021).  Rather, a plaintiff must offer specific facts, not merely recitations of the Carter elements.  See id.; Salamanca v. ABC Corp., 19 Civ. 1335 (RRM) (SIL), 2019 WL 8807843, at *4 (E.D.N.Y. Oct. 30, 2019) (denying default judgment on FLSA and NYLL claims because plaintiff failed to allege specific facts "establishing that [d]efendants satisfy the economic realities test" beyond reciting the elements), report & recommendation adopted, 2020 WL 2542497 (E.D.N.Y. May 18, 2020); Marin v. APU Foods Corp., 17 Civ. 3224 (MKB) (SMG) 2018 WL 1462236, at *4 (E.D.N.Y. Feb. 26, 2018) ("Mere recitations of the elements of liability or the factors of the 'economic reality' test in a complaint are not adequate."), report & recommendation adopted, 2018 WL 1459488 (E.D.N.Y. Mar. 23, 2018); Chuchuca, 2014 WL 6674583, at *9.

Plaintiff fails to establish 144 Holdings's liability under the joint-employer doctrine.  Neither the amended complaint nor the default motion papers sets out specific facts with regards to Plaintiff's work for 144 Holdings or how the business operated.  Rather, Plaintiff refers to Defendants generically, relying on a boilerplate recitation of the Carter factors.  See ECF No. 70 ¶ 50.  Plaintiff did not allege any facts as to the interrelationships of 144 Holdings and the other Defendants, except that Jeanette Clouden ran 144 Holdings at some point.  See ECF No. 70 ¶ 14.  These allegations are not sufficient to support a conclusion that 144 Holdings was Plaintiff's employer, even given the lenient standards of a default judgment.  See Salamanca, 2019 WL

8807843, at *4.  The Court previously gave Plaintiff the opportunity to correct this deficiency by providing supplemental information with regards to his work with Defaulting Defendants.  See Dkt. Entry 5/31/2023 Order.  Plaintiff's supplemental declaration elaborated on his employment with RRMF, see ECF No. 142-1 ¶¶ 3-5, but it failed to give details as to 144 Holdings.

### iv.  Single-Integrated-Enterprise Doctrine

"The single[-]employer doctrine provides that, in appropriate circumstances, an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger single-employer entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer."  Griffin v. Sirva Inc., 835 F.3d 283, 292 (2d Cir. 2016) (citation & internal quotations omitted).  "The Second Circuit has never applied the single[-]integrated[-]employer doctrine to a FLSA claim, but 'courts in the Circuit have found 'sufficient support for its application' in the breadth of the FLSA's definition of an employer and the Second Circuit's interpretation thereof.'"  Syed v. S&P Pharmacy Corp., No. 21 Civ. 6000 (AMD) (PK), 2023 WL 2614212, at *2 (E.D.N.Y. Mar. 23, 2023) (quoting Flores v. 201 W. 103 Corp., 256 F. Supp. 3d 433, 440 (S.D.N.Y. 2017)); Huang v. Shanghai City Corp., 459 F. Supp. 3d 580, 586-90 (S.D.N.Y. 2020) (applying the single integrated enterprise test to FLSA and NYLL claims); Spiciarich v. Mexican Radio Corp., No. 14 Civ. 9009 (SHS), 2015 WL 4191532, at *5 n.5 (S.D.N.Y. July 10, 2015) (collecting cases).  "Absent a clear resolution of this issue, district courts have discretion to consider the theory because the Second Circuit 'has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances.'"  Lopez v. Pio Pio NYC, Inc., No. 13 Civ. 4490 (HB), 2014 WL 1979930, at *3 (S.D.N.Y. May 15, 2014) (quoting Barfield, 537 F.3d at 141-42).

22

The single-integrated-enterprise test "assesses whether nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a single employer." Galicia v. Ice Cream House on Bedford Ave LLC, No. 16 Civ. 6738 (CBA) (PK), 2017 WL 6733985, at *2 (E.D.N.Y. Oct. 17, 2017), report & recommendation adopted, 2017 WL 6759299 (E.D.N.Y. Dec. 29, 2017) (internal citation & quotation marks omitted).  To prevail in an employment action against a defendant who is not the plaintiff's direct or joint employer, "the plaintiff must establish that the defendant is part of an integrated enterprise with the employer, thus making one liable for the illegal acts of the other." Parker v. Columbia Pictures Indus., 204 F.3d 326, 341 (2d Cir. 2000) (internal citations & quotation marks omitted). The "analysis has been confined to two corporate contexts." Gulino v. New York State Educ. Dep't, 460 F.3d 361, 378 (2d Cir. 2006).  "[F]irst, where the plaintiff is an employee of a wholly-owned corporate subsidiary; and second, where the plaintiff's employment is subcontracted by one employer to another, formally distinct, entity." Id. "The doctrine applies in extraordinary circumstances where [a] plaintiff demonstrates sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer." Benzinger v. Lukoil Pan Americas, LLC, 447 F. Supp. 3d 99, 134 (S.D.N.Y. 2020) (citation & internal quotation omitted).

"Under the single[-]integrated[-]enterprise test, 'courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.'" Rosa v. La Oficina of Queens, Inc., No. 18 Civ. 06915 (FB) (PK), 2023 WL 2745214, at *8 (E.D.N.Y. Mar. 17, 2023), report & recommendation adopted, 2023 WL 2736237 (E.D.N.Y. Mar. 31, 2023) (quoting Apolinar v. R.J. 49 Rest., LLC, No. 15

23

Civ. 8655 (KBF), 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016)).  "Although no one factor is determinative[,] . . . control of labor relations is the central concern."  Syed, 2023 WL 2614212, at *2 (quoting Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996)); see Brown v. Daikin Am. Inc., 756 F.3d 219, 227 (2d Cir. 2014) (holding that the most important question in the integrated-enterprise test is "[w]hat entity made the final decisions regarding employment matters?").  Centralized control of labor relations does not require that a defendant exercised day-to-day control over a plaintiff, but it must be shown that a defendant's "involvement [was] sufficient and necessary to the total employment process[.]"  Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 156-57 (2d Cir. 2014) (citations & quotations omitted); see Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1241 (2d Cir. 1995) (finding centralized control of labor relations where "applications for employment with [the corporate subsidiary] went through [the parent]; all personnel status reports were approved by [the parent]; and [the subsidiary] cleared all major employment decisions with [the parent]").  A showing of centralized control requires more than demonstrating that one entity owned real property used by another entity.  "[T]he fact that one entity is the other's landlord does not suggest the lack of an arm's-length relationship between the two entities."  Dobrosmylov v. DeSales Media Grp., Inc., 532 F. Supp. 3d 54, 62 (E.D.N.Y. 2021) (internal quotation marks & alterations omitted).

"In the context of a default, [joint and several] liability may be established based on limited detail about the relationship of defendants."  Nuriddinov v. Masada III, Inc., No. 15 Civ. 5875 (KAM) (RML), 2017 WL 9253401, at *6 (E.D.N.Y. July 24, 2017) (citation omitted). Despite this lenient standard, conclusory allegations of control or even interrelationship are insufficient to establish the existence of an integrated enterprise, even in the context of a motion for default judgment.  See Espinoza v. La Oficina Bar Corp., No. 20 Civ. 1237 (MKB) (RLM),

2022 WL 987429, at *12 (E.D.N.Y. Mar. 1, 2022) (holding, in default context, that "[c]onclusory allegations reciting the economic-realities factors are, however, insufficient to establish . . . a single integrated enterprise"), report & recommendation adopted as modified, 2022 WL 985836 (E.D.N.Y. Mar. 31, 2022); Huang, 459 F. Supp. 3d at 589 (holding that conclusory assertions that businesses are interconnected not "supported by factual content" cannot show that the businesses are an integrated enterprise); Solis v. ZEP LLC, No. 19 Civ. 4230 (JGK), 2020 WL 1439744, at *8 (S.D.N.Y. Mar. 24, 2020) (holding that "conclusory allegations are insufficient to hold [defendant corporation] liable as part of a single integrated enterprise because the [a]mended [c]omplaint lacks any factual allegations that support the conclusions that [defendants] had an interrelation of operations, centralized control of labor relations, common management, or common ownership and financial control over operations"); Delta Deli, 2019 WL 643735, at *3 (holding that, in the default context, plaintiff failed to demonstrate an integrated enterprise where plaintiff's allegations were "wholly conclusory"); Lopez v. Acme Am. Envt'l Co., Inc., No. 12 Civ. 511, 2012 WL 6062501, at *4 (S.D.N.Y. Dec. 6, 2012) ("Allegations of common ownership and common purpose, without more, do not answer the fundamental question of whether each corporate entity controlled [p]laintiffs as employees."). To make out a claim that a defendant was plaintiff's employer under this theory, sufficient facts must be alleged. See Huang, 459 F. Supp. 3d at 589.

It is not clear from the pleadings to what extent Plaintiff relies upon the single integrated employer doctrine. Plaintiff does not explicitly evoke the doctrine in the amended complaint or default motion papers, nor does he distinguish between the single integrated employer and joint employer theories of liability. Even assuming Plaintiff intended to rely on the single integrated employer doctrine, however, Plaintiff has not shown that it establishes liability here.

Plaintiff alleges that the corporate Defendants "are and were interrelated and unified," ECF No. 70 ¶ 35, without "support[] by factual content," Huang, 459 F. Supp. 3d at 589. This is not enough to establish liability in the default judgment context. Plaintiff claims that each of the five residential properties "shared a common management" by Defendants, but Plaintiff does not state that 144 Holdings itself (as opposed to the building in which it was located) operated under a common management with the other Defendants. ECF No. 70 ¶¶ 34-35. Plaintiff does not mention centralized control of labor relations, the most important prong. See Laurin, 2004 WL 513999, at *6. As for the final prong, Plaintiff alleges that Defendants "were centrally controlled and/or owned," which Plaintiff supports with his repeated claim that Mr. Duhaney and Ms. Clouden owned each of the Defendant businesses, including 144 Holdings. Id. ¶¶ 9-16, 35. This allegation of common ownership could be a factor to support the single integrated enterprise claim, but it is a dead end here because Plaintiff does not offer any specific facts about 144 Holdings having controlled Plaintiff as an employee. See Lopez, 2012 WL 6062501, at *4.

Given that the balance of allegations does not suffice to support any theory under which 144 Holdings operated as Plaintiff's employer for FLSA purposes, the Court respectfully recommends that Plaintiff's default-judgment motion be denied as to Plaintiff's FLSA claims against 144 Holdings.

### g. NYLL

The motion for a default judgment as to the NYLL claims is deficient under Local Civil Rule 55.2(c), as discussed above. See, supra, Sec. III(c). The Court believes that the federal claims may be dismissed in the future, and if so, supplemental jurisdiction should not be exercised. The state claims could then be brought in state court. Rather than make a recommendation as to the state claims on the present pleadings and record, the Court believes it

prudent to first resolve the fate of the federal claims. The Court therefore respectfully recommends that the NYLL be denied for the motion failing to comply with the Local Rules and as premature in light of the possible dismissal of the federal claims.

**IV.     Conclusion**

For the foregoing reasons, the Court respectfully recommends that the District Court deny 1) Plaintiff's motion for a default judgment as to Defaulting Defendants on the FLSA claims because Plaintiff failed to comply with Local Civil Rule 55.2(c); 2) Plaintiff's FLSA claims that accrued prior to June 13, 2014 because they are barred by the statute of limitations; 3) Plaintiff's motion for a default judgment as to RRMF because Plaintiff failed to show that RRMF is liable for alleged FLSA violations that took place after RRMF's dissolution in 2012; and 4) Plaintiff's motion for a default judgment as to 144 Holdings because Plaintiff failed to allege facts to establish that 144 Holdings was liable under the FLSA. The Court also respectfully recommends that the NYLL claims be denied a default judgment for failing to comply with Local Civil Rule 55.2(c) and as premature. It is further respectfully recommended that if the District Court adopts the recommendation to deny the default-judgment motion, the District Court enter an order to show cause as to why a) the District Court should not dismiss the federal claims against RRMF and 144 Holdings for failure to allege claims upon which relief may be granted; b) the District Court should not dismiss the federal claims against Jeanette Clouden AKA Jeanette Duhaney and Vincent Duhaney for failure to timely serve them; c) the District Court should not decline to exercise supplemental jurisdiction over the remaining state law claims should the federal claims be dismissed; and d) if the Court were to retain jurisdiction over the state claims, Plaintiff would have standing to bring his wage-statement-and-notice claims in federal court.

## V.      Objections

Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge prior to the expiration of the fourteen-day period for filing objections.  Failure to file objections within fourteen days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (stating that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate[] [judge's] recommended decision, it waives any right to further review of that decision") (internal citation & quotations omitted).  The Court will mail copies of this report and recommendation to the following addresses of Defaulting Defendants: Rutland Road Meat and Fish at 986 Rutland Road, Brooklyn, NY 11212; and 144 Holdings LLC, 580 Crown Street, Apt. 26, Brooklyn, NY 11213.

Dated:  Brooklyn, New York
         September 8, 2023

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge